## BLACKBURN VS. MORTON ET AL.

It is purely a matter of practice, whether depositions can be taken, in a case at law, before the issues are made up: and in the absence of any rule upon the subject, depositions are not rendered irregular by being taken before issue is joined in the cause to which they apply.

Where the certificate of the clerk, attesting the official character of the justice of the peace before whom depositions were taken, has no *locus sigilli,* and the Court below permits them to be read, against general objections, this Court will presume, in favor of the judgment of the Court, that the defect was occasioned by the omission of the clerk in making the transcript.

A general objection to a deposition reaches the relevancy, competency, or legal effect of the testimony only; and will not be considered as extending to any matter of form, or question of regularity, or authority in respect of the taking of such deposition.

Where a party, by his counsel, concedes that an instruction given by the Court below in his favor, is erroneous, this Court will not look into it to determine whether the concession be properly or improperly made.

Where no question is made in respect to the joinder of several plaintiffs in the action, this Court will consider any objection for such cause, if it exists, as having been waived: and if no notice be taken, in the brief, of an instruction objected to in the Court below, the objection will be considered as having been abandoned.

The defendant, in an action of detinue for a slave, having proved five years possession, the Court instructed the jury that if they should find certain facts showing a right of property in the plaintiff, "they should find for the plaintiff, unless they should also find that the defendant had, before the commencement of this suit, held five years peaceable possession of said slave:" *Held*, that there was no objection to the instruction that could militate against the defendant in view of the proof.

Where an instruction is erroneous and calculated to mislead the jury; and the verdict would have been different had the instruction not been given, a new trial will be awarded.

When parties bring themselves within the territorial jurisdiction of our Courts, and one of them applies for redress, they must be held as submitting to all the laws that have been passed for redress of such grievances as are complained of: and so, in such case, the statute of five years possession (*Dig. ch.* 153, *sec.* 3,) will be held to vest a good title to the property, though the possession may have been without the territorial limits of our State.

*Appeal from the Circuit Court of Crawford county.*

The Hon. FELIX J. BATSON, Circuit Judge.

S. H. HEMPSTEAD, for the appellant. The depositions ought to have been excluded because taken before issue joined. *Digest* 431.

The depositions from Alabama were not authenticated by the certificate and seal of the clerk of a Court of record, and should have been excluded. *Dig.* 434.

The instructions given to the jury were improper. Three years is the limitation in an action of detinue: and this may be relied on under the general issue. *Sand. Pl. & Ev.* 434; 3 *J. J. Marsh.* 365.

The plaintiffs not showing a joint right could not recover. 5 *Eng.* 223; 4 *Russ.* 225; 10 *Paige* 459.

The continuity of possession was not broken by trespass or theft. 2 *Caines' Rep.* 153.

WALKER & GREEN for the appellees. The objection to the depositions was general. No intrinsic objections are apparent

upon their face.  A general objection reaches the relevancy, competency or legal effect of the testimony only.  *Garvin vs. Luttrell*, 10 *Humph*. 16; *Hoyes vs. Nance*, 1 *Swan* 57.

We admit that the second instruction is erroneous; but it could not have prejudiced the defendant's case, and therefore not a ground for reversal.  *Bayless vs. Davis*, 1 *Pick*. 206; *Lane vs. Crombie*, 12 *id*. 177.

The proof shows that the defendant resided and held possession of the negro in the Cherokee Nation ever since he bought him.  Can a title to property be acquired, by possession under the statute of this State, by one who has never been within its territorial limits?  It is a maxim of international jurisprudence that no State or nation can, by its laws, directly affect or bind property out of its own territory, or bind persons not resident therein.  *Story's Conf. of Laws, sec.* 20.  A conveyance or transmutation of property by mere operation of law, operates only upon the property within the territory of the Legislature. (*Id.* 411.)  To acquire title to property by prescription, the possessor and the property must continue within the jurisdiction of the Legislature during the whole of the prescribed period. (*Sec.* 582.)  Title by five years possession cannot be acquired by a person residing in the Indian Nation, because the owner cannot assert his claim in time.

Mr. Justice HANLY delivered the opinion of the Court.

This is an action of detinue, commenced in the Crawford Circuit Court, on the 5th February, 1855, for a slave, at the suit of Allas J. Morton and Harriet his wife, and Elizabeth Alice Smith, an infant, by Wm. Walker her next friend, against the appellant.  Plea, *non detinet*, and issue.  Trial by a jury, and a verdict and judgment for appellees.  Motion for a new trial, assigning for grounds: 1st. That the Court permitted illegal evidence to go to the jury.  2d. That the Court misdirected the jury.  3d. That the verdict was contrary to the instructions of the Court, and excessive.

The motion for a new trial was overruled, and appellant ex-

cepted, setting out the testimony and the instructions given to the jury.

The following is the testimony:

John Shields, of Dallas county, Alabama, by deed of the 16th October, 1846, in consideration of the natural love and affection he bore to his son-in-law, Girard J. Smith, and his daughter Harriet, wife of Girard J., conveyed the slave sued for, among others, to the said Girard J.—but in trust as follows:

" 1. The said party of the second part (Girard J. Smith) is to hold possession of said slaves, and be entitled to the management and control of them, and to receive their labor and the profits arising from their labor for the support and maintenance of the said party of the second part, and Harriet his wife, during their joint lives, and during the life of the party of the second part, should he survive his said wife; and in case she should survive him, then for her support and maintenance, and that of her children by the present, or any subsequent husband during her life.

2. That the said party of the second part (Girard J. Smith) is to hold the legal title to said negroes, in trust for the use and benefit of Elizabeth Alice and Felix, the children of the said party of the second part, and Harriet his wife, and any other children which the said Harriet may have, either by the present or any subsequent marriage, to be equally divided between them, share and share alike, at the death of the said party of the second part, should he survive his wife, or at the death of Harriet, should she survive her husband.

Girard J. Smith left Dallas county, Alabama, in 1848 or 1849, and came to this State, bringing with him the slave in controversy, together with several others of the slaves mentioned in the deed of trust, and died in the city of New Orleans, in the latter part of 1849, or in the early part of 1850, leaving Harriet, his wife, in the deed of trust named, and three children, viz: Elizabeth Alice, Felix and Hermion, him surviving. In July, 1851, Harriet, the widow, intermarried with the appellee, Morton, and in 1852 Felix and Hermion, the two youngest children of Girard Smith and Harriet, died before they attained

their majority, and without issue, leaving the appellee, Elizabeth Alice Smith, the only surviving issue of Girard Smith and Harriet, them surviving.   The slaves mentioned in the deed of trust belonged to John Shields, the donor, at the time of the execution thereof, and Girard J. Smith held them in his possession, under the deed of trust, down to the time of his leaving Alabama.

The above facts were established by the deed of trust itself, and the depositions of John Shields, the donor named in the deed of trust, and William B. and Edward T. Shields his sons.

Edward T. Shields, in addition to the facts above stated, deposed that after Smith's death, say in the summer of 1852, he, as the agent of his sister Harriet, one of the appellees, went to Fort Smith, in this State, in quest of the slave Tom, in controversy in this suit, who is the same boy Tom in the deed of trust described as being named Tom, and aged fifteen years; and on his arrival at that place, ascertained that he was in the possession of the appellant, Blackburn, who resided in the Cherokee Nation of Indians,   That both appellant and the slave being beyond the reach of civil process, he was induced by the attorneys whom he consulted, to hire a man to bring the slave to him, and by that means he obtained possession of the slave, whom he knew to be the identical same boy Tom mentioned in the deed of trust, and started on his return home with him, when he was arrested at appellant's instance, and taken to Van Buren, and whilst on his way, with the slave, from Van Buren to Fort Smith, to answer the charge made by appellant, appellant, accompanied by several others, took the slave out of his possession.   His understanding was, that the slave was taken from him by virtue of a writ of replevin, or some other process. At all events appellant directed the seizure and capture of the slave.   The slave was worth then $1,000.   Morton, one of the appellees, is the husband of his sister Harriet, the widow of Girard J. Smith, and appellee, Elizabeth Alice, is the only surviving child of the said Harriet.   He further stated that appellant told him he bought the slave in controversy from Girard J. Smith.

Appellees also proved that the hire of the slave in question was worth from $100 to $125 per annum. This was all the proof adduced on the part of the appellees.

Appellant then proved that Girard J. Smith, by bill of sale, bearing date 26th October, 1849, sold the same slave to him. That at the time of the execution of the bill of sale, the slave was aged about 15 years, and that he was, at the time of the trial, worth $800. That the appellant has resided in the Cherokee Nation of Indians ever since he purchased the boy of Smith, and has during all that time, had the slave in his possession in the Nation. That Edward T. Shields obtained possession of the slave, in the manner by him stated above—that he was arrested upon a charge of larceny, for the act, and whilst under the arrest, the boy was replevied out of his possession at the suit of appellant; and that, at the time the slave was so replevied, Shields refused to say, in answer to an interrogatory propounded, that he recognized or knew the negro, but said he thought he knew him.

The appellant objected to the reading of the depositions of the witnesses on the part of the appellees, all the proof on their part being presented in the form of depositions, some of them having been taken in Dallas county, Alabama, whilst others were taken in Missouri. The objections to the depositions were *general*, and were overruled by the Court, and he excepted.

Certain instructions were given to the jury, at the instance of the appellees, which were also objected to, at the time, and exceptions taken by the appellant, when they were given. The instructions, as given by the Court, were as follows:

" 1. That if the jury believe from the evidence, that the negro man mentioned in the declaration, is one of the negroes mentioned in the deed of trust executed by John Shields to Girard J. Smith, and that he was in defendant's possession at any time before the commencement of this suit, and that he claimed him under purchase from said Smith, and that, before the commencement of this suit, Girard J. Smith in that deed of trust named, has died, and his widow, Harriet, one of the plaintiffs intermarried with plaintiff, Morton, and that at the time of

the commencement of this suit, the plaintiff, Elizabeth Alice, was the only surviving child of the said Harriet, they should find for the plaintiffs, unless they should also find that said defendant had, before the commencement of this suit, held five years peaceable possession of the said slave.

2d. That in order for the defendant's possession to give him a title to the negro, it must appear that the possession was continuous: and that if the jury find from the evidence that the said negro was in the possession of the plaintiffs, or their agent, within five years next before the commencement of this suit, they will disregard the evidence offered to prove title by possession.

3. That the variance between the names of the plaintiffs apparent in the declaration, and depositions, is of no consequence so that it appears that they are the same persons."

Blackburn, the defendant below, appealed, and assigns for error:

1. That the Court below admitted improper evidence against the objections of the appellant.

2. That the Court below overruled the motion of the appellant for a new trial.

3. General assignment.

We will dispose of the errors assigned in the order in which they severally occur.

1. Did the Court below admit improper evidence against the objections of the appellant?

The record in this case shows that, before the return term of the original writ, application was made to the clerk of the Court below for leave to take depositions in behalf of the appellees, and that a rule was entered accordingly, and after notice given, the depositions, which were the only evidence offered, on the part of the appellees, in the Court below, were taken under a regular commission, etc. It is insisted by counsel on the part of the appellant, that these depositions were not admissible, because taken before any issue was made up in the cause.

There seems to be no provision of our statute requiring issues to be made up in law causes before a rule is entered to take

depositions. It is therefore a matter purely of practice, and we are not advised that there has been any uniform rule of practice established on the subject. In the absence of such a rule, we are constrained to hold, as we do in this case, that depositions are not rendered irregular by being taken before issue is joined in the cause to which they apply. If taken before issue is formed, they are, as a matter of course, taken at the peril of the party who takes them; for if they should be found inapplicable to the issues when made up, as a consequence, they would not afford evidence for the party in consequence of the application and operation of the principle, that the *allegata* and *probata* must agree. With this qualification depositions taken under the circumstances are admissible, if regular in other respects, as much so as if taken after issue formed.

It does not appear from the record before us, that the certificate of the clerk of the Probate Court of Dallas county, Alabama, which attests the official character of the justice of the peace before whom the depositions in that State were taken, is authenticated under the seal of that Court, as contemplated by the statute in such cases.

It appears, however, that the certificate of the Clerk to the depositions, concludes thus: " In witness whereof I have hereunto set my hand as such clerk, and affixed the seal of said Probate Court of Dallas county, the same being a Court of record, at office in the town of Cahawba, etc."

It is insisted, on the part of the appellant, that these depositions should have been excluded as evidence for the appellees, on account of this omission. This Court will presume in favor of the regularity, and in support of the judgment of the Court below, and this presumption is so violent in favor of the proceedings of the inferior Court, that when a defect is observed to exist in the record, which would affect the judgment of such Court, that the defect was occasioned rather by the omission of the clerk—a ministerial officer—than by the solemn act of the inferior Court. See *Broom's Leg. Max*. 729. *Briggs vs. Clark*, 7 *How*. (*Mi*.) *Rep*. 457. *Robinson vs. Francis, same* 458. *Smith vs. Berry*, 1 *Sm. & Mar*. 321. *Pender vs. Felts*, 2 *same* 535.

Applying the principle thus stated, we are forced to intend in this case, that the certificate of the Alabama clerk was authenticated by his seal, in the absence of affirmative proof to the contrary, and that the omission, in the transcript before us, was occasioned by the clerk of the Court below in failing to annex a *locus sigilli* to the transcript, where the seal to the original document was affixed.

But it was really quite unnecessary for us to have considered or determined these objections to the depositions before us, for the reason, that the objection to the depositions was simply *general*, the counsel for the appellant in the Court below failing to make his objection *specific* or *special*. The rule in such case being that a *general* objection to a deposition reaches the relevancy, competency or legal effect of the testimony, only. See *Garvin vs. Luttrell*, 10 *Humph*. 16: in which case, McKINNEY J., in delivering the opinion of the Court, said: "We hold that a general objection to the reading of the deposition, as in the present case, will be construed in this Court as referring merely to the competency, or relevancy, or legal effect of the testimony contained therein; and will not be considered as embracing or extending to any matter of form, or question of regularity, or authority in respect to the taking of such deposition. If it be liable to objection upon either of the latter grounds, the specific exception must be pointed out with reasonable precision and certainty: and if overruled in the inferior Court, must be set forth in the bill of exceptions, and no exception, not thus taken and set forth in the record, can be raised or assigned as error in this Court. To hold otherwise would, not unfrequently, enable a party to obtain a reversal perhaps on some ground merely formal or technical, not made in the inferior Court, and which, if it had been taken there, might have been easily obviated." See also, *Duval vs. Ellis*, 13 *Mo. R.* 203. *Hughes vs. Nance*, 1 *Swan R.* 57. *Sexton vs. Brock*, 15 *Ark. R.* 345, 348.

We have no hesitation, therefore, in holding that the Court below did not err in admitting the depositions taken in this cause, to be read at the trial thereof.

2. Did the Court below err in overruling the motion of the appellant for a new trial?

The counsel for the appellant seems to have abandoned the *third* ground assigned in his motion for a new trial, relying in this Court upon the one we have just considered, embraced in his first assignment, and the remaining one viz: " that the Court misdirected the jury." We will, therefore, in determining the question lastly propounded, proceed to consider it in reference to each of the three instructions given by the Court below at the instance of the appellees and against the objection of the appellant.

As to the *first* instruction. There being no question made, either in the Court below, or in this Court, in respect to the joinder of the plaintiffs in this action, we will consider the objection upon that score, if any exists, as having been waived by the counsel. Conceding then that the appellees, under the proof, had such a joint interest in the subject of the suit as entitled them to join in an action for its recovery, we will at once proceed to determine the propriety of this instruction.

The peaceable possession of slaves, acquired after the 19th Dec'r, 1846, for the space of five years, shall be sufficient to give the possessor the right of property thereto, as against all persons whatsoever, and which may be relied on as a complete bar to any suit in law or equity. See *Dig. ch.* 153, *sec.* 3 *p.* 943.

With the concession above assumed, we can discover no objection to this instruction, which could militate against the appellant, in view of the proof shown upon the record. We therefore hold, as far as the appellant is concerned, that the Court below did not err in this instruction.

As to the *second* instruction—

It is conceded on the part of the counsel for the appellees, that this instruction is erroneous. We shall not look into it to determine whether the concession was properly or improperly made.

As to the *third* instruction—

The objection to this instruction, if objectionable at all, seems

to have been abandoned in this Court by the counsel for the appellant. No notice is taken of it in his brief. It was therefore, on this account, that we omitted, in the statement of the case, to designate the supposed variance between the names of the appellees, as apparent in the declaration and depositions. We will therefore pass this, and proceed to consider the other ground for a new trial, set forth in the motion.

3. Was the finding of the jury contrary to the instructions of the Court?

We are of opinion that the jury were warranted in finding for the appellees under the second instruction, which their counsel has conceded to be erroneous. This instruction being erroneous, and calculated to mislead the jury, we are irresistibly forced to the conclusion, that if this instruction had not been given them, their verdict would have been different—certainly for the appellant.

This disposes of the assignments and the questions growing out of them, except in relation to one point made by the counsel for the appellees in their brief. It is insisted that the statute of five years possession cannot be successfully invoked by the appellant under the facts shown by the record; for the reason, that the appellant has resided with the property in controversy, beyond the territorial limits of this State, in the Cherokee Nation of Indians, ever since he bought the slaves in question from Smith, in October, 1849, when his possession commenced, averring that our statute—the one making five years peaceable possession of slaves, give to the possessor the right of property against all persons—did not commence to operate upon the subject matter, or the parties to this suit, until they were brought, or voluntarily came, within the territorial limits of this State, and, consequently, within the influence of the laws thereof. In support of this position, we have been referred, by the counsel, to the work of Judge Story on the Conflict of Laws. We have noted the citations made, and conceive the counsel has misapprehended the force and meaning of the passages referred to. If the learned author is not misunderstood by us, we can say on the subject with PARKER CH. J.: " That the laws of any State

cannot, by any inherent authority, be entitled to respect extra-territorially, or beyond the jurisdiction of the State which enacts them, is the necessary result of the independence of distinct sovereignties." (See *Blanchard vs. Russell,* 13 *Mass. R.* 4.) In applying the principles we have laid down in reference to the possession of the slave by the appellant, under the circumstances indicated by the record, we have not called to our aid any foreign or extra-territorial laws or statutes; but on the contrary, the principle has been proclaimed, and the doctrine maintained: " that the recovery must be sought and the remedy pursued within the time prescribed by our own law—the *lex fori*—without regard to the place where the cause or its merits originated." (See *Story's Conf. Laws,* 487.)

And further, as held in *McElmoyle vs. Cohen,* (13 *Peter's R.* 312,) that, " prescription is a thing of policy growing out of the experience of its necessity: and the time, after which suits or actions shall be barred, has been, from a remote antiquity, fixed by every nation, in virtue of that sovereignty by which it exercises its legislation for persons and property within its jurisdicdiction."

Applying these principles and authorities to the case before us, and the result is inevitable, that the parties having brought themselves within the territorial jurisdiction of our Courts, to which one of them has applied for redress, they must be held as submitting to all the laws, which have been passed for the redress of such grievances as are complained of; as much so, and to the same extent as if they were citizens of this State, and had resided here continuously and uninterruptedly since the cause of action in this behalf accrued. (See 22*d Ala. R.* 339.) And we are rather confirmed than shaken in the conclusion just expressed, by the cases of *Bulker vs. Roache,* (11 *Pick. R.* 36,) and *Leroy vs. Crowningshield,* (2 *Masons R.* 151.)

In conclusion, therefore, we are forced to hold that there is error in the judgment of the Crawford Circuit Court in respect to the matters hereinbefore pointed out.

On account of these errors, the judgment is reversed, and the cause remanded, to be proceeded in, etc.