## EX PARTE BENSON & CO.

### GIBBES v. GREENVILLE AND COLUMBIA RAILROAD COMPANY.

### STATE, EX RELATIONE ATTORNEY-GENERAL, v. SAME.

1. The common-law rule seems to be that common carriers shall transport goods at reasonable rates, but this rule does not require the same rate of compensation to be charged alike to all.
2. Independent of charter and statute restrictions, corporations stand upon the same footing as other persons invested with powers of contracting, and their contracts depend upon the same principles that govern contracts between natural persons.
3. A contract of a railroad company to pay a rebate upon all cotton shipped over their road by certain cotton buyers is not inequitable or against public policy; and, after the shipment made, is binding on the company and its creditors.
4. And the contract having been made by the superintendent while the road was in the hands of a receiver, the claim for rebate under such contract should be paid out of the receiver's fund.
5. *In re Fifty-four First Mortgage Bonds*, 15 *S. C.* 304, qualified by McGowan, A. J.

---

Before FRASER, J., Richland, December, 1881.

Petition by E. B. Benson & Co. *in re* Gibbes *v.* Greenville and Columbia Railroad Company, and the State, *ex relatione* the Attorney-General, *v.* same. The petition was based upon a contract made by letter, and which is fully stated in the opinion.

The Circuit decree, after a statement of the facts repeated in the opinion, was as follows:

Under orders, in such cases, receivers are sometimes allowed to do certain specific acts; but, in this case, there is no limit, except, as I construe the order, that which is furnished by a wise discretion, subject to the order of this court. No unlimited power was ever claimed, and none was conferred by the order. I take it that every contract was made subject to the supervision of the court, and that no wrong is done even at this late day, if the approval of the court is withheld from a contract which has in it no substantial merit. The authority in *High Rec.* 392, and *Jones Railr. Sec.*, § 498, rest on the same case, and I find no other for allowing a payment of *rebates* in a receiver's account. It is an unfair discrimination amongst shippers, and I do not think proper, especially when made by an appointee of the court. I cannot concur in the opinion expressed by the witness that such contracts are necessary. The interest of a great common carrier, like a railroad company, is best subserved by fair and equal rates of freight, which are open to all. The question is a new one in this State, and I am not willing, in this case, under a loose construction of Judge Melton's order, to give the approval of the court to a contract which I think is against public policy, and could not have been of any real benefit to the property under the control of the court, and has no equity. The exceptions are, therefore, sustained, and it is; therefore, *ordered and adjudged*, that the petition be dismissed with costs.

The exceptions of petitioners raise the questions of the validity of the contract and the right to payment out of the receiver's fund.

*Messrs. J. S. Muller, J. T. Sloan,* for appellants.

*Mr. James Conner,* contra; cited 99 *U. S.* 252; 52 *N. H.* 448; 62 *Pa.* 230; 7 *Vr.* 407.

August 8th, 1882. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   The appellants, Benson &
Co., filed a petition in the court below *in re* the above stated
causes, praying payment of a certain claim for $668 as rebate
freight on six hundred and sixty-eight bales of cotton shipped
over the Greenville and Columbia railroad by the petition-
ers, from Anderson Court House, during the cotton season of
1877–78.   This claim was founded upon an alleged contract
between the petitioners and the president and directors of said
railroad company acting as receivers under the order of June
18th, 1872, known as Judge Melton's order, and the petition
prayed payment out of the "receivers' fund."   The contract
relied on by the petitioners is not denied, nor is it denied that
the petitioners have fully performed their part thereof.

The contract is fully set out in the petition.   In substance, it
is as follows:   The petitioners were engaged in buying cotton.
They purchased largely in Hartwell, Georgia, and, with the
view to induce them to ship their cotton, bought at that place,
over the Greenville railroad instead of down the Savannah river,
Thomas Dodamead, the then superintendent of the said road,
proposed that if they would ship all cotton purchased during
the season of 1877–78, in Hartwell, by way of Anderson,
S. C., over said road to Charleston or Augusta, they, the said
president and directors, would transport said cotton at the
regular rates, the freight to be paid at the regular rates by the
consignees, with the understanding, however, that the petitioners
should have refunded to them, at the close of the season, the sum
of one dollar per bale so shipped to either point above men-
tioned.

This proposition was accepted by the petitioners, and a con-
tract made accordingly, and, as has been stated, was acted upon
by petitioners to the extent of shipping the six hundred and
sixty-eight bales mentioned above over the road during the
cotton season specified.   At the end of the season, the agent at
Anderson, C. H., made out a statement of the number of bales
shipped under the contract with Mr. Dodamead, the superintend-
ent, with vouchers for the amount due, who approved the same
in regular form for payment and forwarded it to the treasurer's
office to be placed to the credit of Benson & Co.   The claim,

however, was not paid, because, as Mr. Dodamead says : "The funds on hand were not sufficient, every available dollar being used to pay interest on debt of road instead of being applied to current expenses."

Mr. Dodamead further testified in this connection, that such a debt as this one, to wit, rebate on interchange of freights, should have a preference to all other debts, as they are essential to the successful competition of railroads over freights.   He said that they were competing with the Savannah river transportation, and the benefit of this particular transaction to the business of the road was, that it brought cotton to the road which would not have otherwise come ; besides that, the persons who hauled their cotton, also bought their supplies there, and the road got the benefit, not only of the freight in the cotton down, but also on the return supplies.

In the latter part of the year 1878, the railroad property passed out of the hands of the president and directors, heretofore receivers, into the possession of a second receiver appointed under an order of Judge Pressley, made to that end, and, the claim of the petitioners still remaining unpaid and refused, this petition was filed on November 2d, 1881.   At the December Term of the court for Richland county, the master to whom the petition had been referred to take testimony touching the claim, and to report thereon to the court, submitted his report, embracing the facts herein above stated, with a recommendation that the claim be allowed, and paid out of the fund known as the "receiver's fund."

At the hearing below, Judge Fraser, upon exceptions to the master's report, dismissed the petition with costs, holding, substantially, that the contract was without equity, was against public policy, could not have been for the real benefit of the company, was an unfair discrimination between shippers, and was not proper, especially when made by an appointee of the court.   From this decree of Judge Fraser, the petitioners have appealed, and the appeal, though founded upon several exceptions, really brings up but a single question, to wit: Are the petitioners entitled to payment out of the receiver's fund in priority to mortgage bondholders ?

It is admitted that this contract was made prior to the act of 1878 (16 *Stat.* 784), regulating the matter of freights and charges on railroads and preventing rebates. It will be also conceded that there is nothing in the charter of this company which forbade such a contract. In the absence of statutory regulations then controlling the action of the company, it being a common carrier, we must look to the common law for the principles which are to govern in such a case.

What does the common law say as to questions like this? The leading principle of the common law, as applicable to common carriers, is that they are bound to carry for all, and for a *reasonable renumeration* from each. In *Johnson* v. *Pensacola and Perdido Railroad Co.*, 16 *Fla.* 623, Mr. Justice Westcott, in discussing a similar question to the one involved here, has collected many authorities bearing upon this point, and the conclusion which he reaches is: "That as against a common or public carrier, every person has the same right; that in all cases where his common duty controls, he cannot refuse A. and accommodate B.; that all the entire public have the right to the same *carriage for a reasonable price at a reasonable charge for the service performed,* and the commonness of the duty to carry for all does not involve a commonness or equality of compensation or charge; that all the shipper can ask of a common carrier is, that for services performed, he shall charge no more than a *reasonable sum to him.*"

This conclusion is sustained by numerous authorities, both English and American. *Peek* v. *North Staffordshire Railroad Company,* 10 *H. L.* 511; *Bastard* v. *Bastard,* 2 *Show.* 82; *Harris* v. *Packard,* 3 *Taunt.* 264; *Citizens' Bank* v. *The Nantucket Steamboat Company,* 2 *Story* 35; 4 *Otto* 155; 1 *Chitty Cont.* 684. In *Fitchburg Railroad Company* v. *Gage,* 12 *Gray* 393, the Supreme Court of Massachusetts held that a "railroad corporation is not obliged, as a common carrier, to transport goods and merchandise for all persons at the same rate," the common law rule being that equal justice shall be done to all parties. "But the equality which is to be observed in relation to the public and to every individual consists in the restricted right to charge in each particular case of service a reasonable

compensation and no more." If the carrier confines himself to this, no wrong can be done, and no cause afforded for complaint.

In the eighth edition of *Story Bailm.*, § 508, it is stated that "at common law, a common carrier of goods is not under obligation to treat all customers equally. He is bound to accept and carry for all, upon being paid a reasonable compensation. But the fact that he charges less for one than for another is only evidence to show that a particular charge is unreasonable, nothing more. There is nothing in the common law to hinder a common carrier from carrying for favored individuals at an unreasonably low rate, or even for gratis."

As extracted from these authorities, and many others which might be cited, the extent of the common law rule seems to be, not that carriers shall transport for all parties at the same rate of compensation, otherwise their contracts are illegal and void, but that they shall transport at reasonable rates to all. A difference in charge does not *per se* invalidate the contract as inequitable and against public policy; but to have this effect, there must be an element of unreasonableness in the charge itself, as applied to the services rendered, between the parties to the contract and without comparison to the charges against others.

Independent of statutes and provisions in their charters restricting corporations within certain limits, they stand in the community as other individuals invested with the power to contract and be contracted with, and the validity of their contracts depends upon the same principles which govern in contracts between natural persons. It is too vague to say, in general terms, that the contract is inequitable and against public policy, and, therefore, not enforceable. To be void on such grounds, it must run counter to some known principle of equity or contravene some well-established doctrine of public policy forbidding it.

We do not know that this contract was obnoxious to any of these objections; nor, in the face of the testimony of the experienced superintendent who gave it, can we say that it was unnecessary. The cotton which he brought to the head of his road at Anderson, C. H., was grown in the State of Georgia, at a distance from Anderson. The Savannah river, running be-

tween Anderson and Hartwell, was its natural outlet to market, and, no doubt, afforded cheaper transportation. With these obstacles in the way, it required some inducement to be held out so as to bring this cotton to the Greenville road. And so long as the charges against others were not unreasonable, and in no way increased by the rebate offered to it, what ground is there for the courts to interfere? It is the province of the court to enforce contracts, not to destroy them.

But the main question in the case is, should this claim be paid out of the "receiver's fund." In the present unsettled state of the law as to what expenses may be properly chargeable to income in the hands of a receiver operating a railroad or other enterprise taken possession of by the court at the instance of mortgage creditors, it is difficult to lay down any inflexible rule by which every claim may be tested and determined. In the early history of such cases, these charges were at first confined to such expenses as were necessary to the preservation of the property. But the doctrine has been progressive, gradually enlarging until now many items of expense which, at first, would have been excluded, would be allowed, and justly so. If creditors, through the aid of the courts, will oust corporations of their property, take possession and operate the enterprise preparatory to an ultimate sale, through their agents, and for their own benefit, all the necessary and incidental expenses should certainly be paid, and the doubt in my mind is, not whether they should be chargeable to the earnings alone, but whether the corpus also should not be liable.

But to recur: What character of expenses will be allowed? It is said in *Jones Railr. Sec.*, § 498, "That all outlays of a receiver of a railroad, made in good faith, in the ordinary course of the management and operation of it, or so made with the view to advance and promote the business of the road and make it profitable and successful, are fairly within the limit of discretion necessarily allowed him. Thus," he continues, "payments made by him as *rebatement of freights* to shippers in order to secure custom and increase the business of the road, being in the nature of drawbacks, such as are usual with transportation com-

panies, are properly within his discretion," referring to *Cowdrey* v. *Railroad Company*, 1 *Wood* 331.

In *High Rec.*, we find the following (section 392): "The duties of the receiver of a railway entrusted with the management and operation of the road, being very different from, and far more responsible than those of a passive receiver, appointed merely to collect and hold money, a somewhat wider discretion is allowed him in the matter of expenditures necessary to operate the road. And it may be said in general, that all outlays made by him, in good faith, in the ordinary course of the business of the road, with the view to advance and promote its interests, and to render it profitable and successful, may be allowed in passing his accounts; such outlays may include, not only keeping the road and its buildings and rolling stock in repair, but also procuring such additional accommodations and stock as the necessities of the business may demand, always referring to the court or master for advice when any considerable outlay is required. Thus, the charge for *rebate on freights* for horses and wagons, for the delivery of freight, for drayages and wharfage, for office room, for advertising the accommodations of the road, and for interest paid a bank for loans of money, have been allowed."

It is true these authorities are not, in themselves, binding upon this court; but they come from distinguished text writers, and are worthy of consideration, especially as the principles announced are founded in good sense, and rest upon high equity. At all events, as was said by Mr. Justice Bradley, in the case of *Cowdrey* v. *The Railroad Company, supra*, "Whatever objection to these rebatements might be made by the State, or by the planters and others who did not obtain like favorable terms, it does not lie in the mouths of the creditors, who reap positive benefits from the arrangements, to complain of it." And especially is this remark pertinent in this case, when it is remembered that the receivers here were appointed at the instance of the creditors under an order which invested them with almost unlimited power and authority, the exercise of which, in its widest range, they stood by and permitted, without objection or protest, for a period of five or six years.

In the case of *Ex parte Brown & Wife*, 15 *S. C.* 532, this

court held that the order of June 18th, 1872, not only constituted the president and directors receivers in the general sense, but conferred upon them "sweeping powers to conduct and carry on the business of the company." In the *Fifty-four Bond Case*, 15 *S. C.* 304, pronounced before *Ex parte Brown*, the same construction was given to this order. The authority of High and Jones may not be controlling, but the two cases referred to above are from this court, and we cannot disregard them. The principles held in those cases, and under which the claims set up therein were allowed, vindicate fully the claim of the petitioners here, both in point of authority and in the substantial justice which underlies it. We think the Circuit judge was in error in dismissing the petition.

It is the judgment of this court that the Circuit decree be reversed and that the case be remanded, so that the amount found due by the master may be decreed to the petitioners to be paid out of the "receiver's fund."

MR. JUSTICE McGOWAN. I concur in the result; but as the reference to the *Fifty-four Bond Case* may be construed as approving all that is there said, I think it proper, in order to prevent confusion hereafter, to say that I do not agree with some things said in that opinion, especially the statement that "large discretion is allowed him (the receiver) in the financial manipulation of the assets." In my view, a receiver is not the agent of the company so as to bind it by his contracts, but simply the officer of the court. His new administration is separate and distinct from that of the company, and, without the express orders of the court, he has no right to touch the general finances of the company, but is limited to the income which arises from operating the road while under his control.

Judgment reversed.