NORTHERN PAC. R. CO. *v.* ST. PAUL, M. & M. RY. CO. *et al.*

(*Circuit Court, D. Minnesota, Third Division.* October 3, 1891.)

1. JUDGMENT—RES JUDICATA—DISMISSAL "WITHOUT PREJUDICE."

In a suit by a railroad company to recover a large quantity of lands claimed by it, the decree, as to all such lands not awarded by it to the plaintiff, dismissed the bill, without prejudice to the right of said plaintiff to institute and prosecute other suits or proceedings for establishing its right to said lands. *Held,* that this gave the railroad company the right to bring another suit in equity to establish its right and title to such lands, although its bill in such new suit on its face showed no better or greater equitable right to the land than was set up in the former suit.

2. INJUNCTION.

Pending such former suit, the land being in demand for settlement, the parties had made a stipulation agreeing upon a special commissioner, subject to the approval of the court, to take possession of and sell, under the terms of the stipulation, all lands in dispute in that suit; and such commissioner had in the depository of the court a large sum, proceeds of such sales, which, under the stipulation, would be turned over to the defendant in that suit. *Held* that, as the bill in the second suit showed a primary equity in such lands and their proceeds, and the commissioner was a party defendant thereto, an injunction should be granted therein to prevent the transfer, payment, etc., of any moneys, credits, contracts, etc., derived from the sale of the lands claimed therein, notwithstanding defendant's alleged pecuniary responsibility to pay any decree that might be obtained.

3. RECEIVERS.

It further appeared that the control of the special commissioner over such fund would cease when the mandate in the former suit should be executed, and that he had in his hands contracts for the unpaid purchase price of lands sold by him. *Held,* that a receiver of such property should be appointed.

In Equity. On motion for injunction, etc.

*F. M. Dudley, James McNaught, J. H. Howe,* and *John C. Bullitt, Jr.,* for complainant.

*Geo. B. Young* and *Thomas R. Benton,* for defendants.

NELSON, J. A bill is filed by the Northern Pacific Railroad Company, asserting title to certain lands claimed by the defendant company, the St. Paul, Minneapolis & Manitoba Railway Company, which lands are embraced within the indemnity limits of the complainant's railroad under congressional land grants. Other parties are made defendants, and an injunction is prayed for, and such other relief in the premises as is just and equitable. In 1875 a suit was instituted by this complainant seeking to recover a large quantity of land, including the land claimed in this bill of complaint, and proceeded to final decree in the circuit court for this district. The quantity of land being large, and in demand for settlement, a stipulation was made and entered into, and filed

July 13, 1878, by the principal litigants, agreeing upon a commissioner, (Edward Sawyer,) subject to the approval of the court, to take possession of and sell under the terms of, and in accordance with, the stipulation, all lands in dispute in that suit. The decree of Judge BREWER, before whom the case was heard in 1886, contained this paragraph:

"(4) The bill of complaint herein of the Northern Pacific Railroad Co., as to all lands mentioned or described therein which are not by this decree awarded to the plaintiff, is hereby dismissed, without prejudice to the right of said plaintiff, its successors or assigns, to institute and prosecute such other and further suits or proceedings, either at law or in equity, as to it or them may seem necessary or proper for establishing its or their right of title, if any, to said lands not so awarded to the said plaintiff." 26 Fed. Rep. 551.

On appeal to the United States supreme court this decree was affirmed. 139 U. S. 1, 11 Sup. Ct. Rep. 389. The paragraph above referred to, dismissing "without prejudice," gave the complainant the right again to bring suit, at law or in equity, to establish, if possible, its right and title to the lands not awarded it by the decree of Judge BREWER in 1886. This bill of complaint seeks to establish a title to such lands which are embraced in the schedules attached thereto. The commissioner has in the depository the proceeds of some of these indemnity lands sold under the stipulation, amounting to a large sum. He is made a party to this suit, and also certain other defendants, and an injunction is asked restraining him from transferring, selling, assigning, delivering, or paying over, and the other defendants, and each of them, from taking and receiving, any moneys, credits, effects, notes, contracts, etc., in the possession of said commissioner Sawyer, or either of said defendants, coming and arising from, or growing out of, the sale, etc., of the lands contained and described in the schedules, or any part thereof, or interest therein, or any part thereof. No land, or the proceeds thereof, was awarded in terms to the defendant company by the decree of Judge BREWER in 1886. A restraining order was issued, and upon the return-day of the order to show cause why an interlocutory injunction should not issue the motion was resisted, and an affidavit filed, and an elaborate argument was made.

The bill of complaint, in my opinion, shows a primary equity in aid of which the preliminary injunction is asked, and a well-grounded belief of immediate injury. The fourth provision of the decree in the 1875 suit left the complainant free to institute further proceedings, and the fact that the bill now filed on its face shows no better or greater equitable right to the land than was set up in the suit which it initiated in 1875 does not weaken the force of the decree giving the right to assert title in another suit. The court expressly dismisses that part of the bill relating to the indemnity lands of the complainant "without prejudice." It was not such a final determination of the complainant's claim to these lands that an appeal from this part of the decree was necessary before another suit could be commenced, and it is doubtful if an appeal could have been taken therefrom. The decree or order of dismissal is not presumed to have been rendered on the merits, and there was no de-

cisive and final determination of the controversy with reference to these lands. The equity practice in England (2 Daniell's Ch. Pr. 994, 5th Amer. Ed.) and in this country, as I understand it, is that, when a bill is dismissed, and there is an intention further to litigate the matters involved, the decree or order of dismissal uses the qualifying words "without prejudice;" and where such words are used, although the relief sought in a new bill of complaint and the matter therein is precisely the same as in the original bill, the parties will be permitted to litigate their claims as if no previous suit had been commenced. Such a decision "without prejudice" is like a nonsuit in a common-law action. When the decision of the United States supreme court in the case of *St. Paul & Pac. R. Co.* v. *Northern Pac. R. Co.*, 139 U. S. 8, 9, 11 Sup. Ct. Rep. 389, is examined, this language is found:

"After a map of the general route of the road of the plaintiff was filed, as above stated, [November 21, 1871,] and the line of the road in Minnesota was definitely fixed, the commissioner of the general land-office designated upon maps and records in his office the limits of the lands granted by congress to the plaintiff, according to the provisions of the act of 1864, and the above joint resolutions, [May 31, 1870,] namely, the 20, 30, and 40 mile limits on each side of the line of definite location, the first named being the limits of the lands in place; the second, the limits of the indemnity lands; and the third, or forty-mile limit, the limits of the further indemnity granted by the joint resolution of May 31, 1870. And, upon such designation, it was found that there was not in the state, within those limits, at the time of the final location of the road, the amount of lands intended by the grant of congress for the plaintiff, not previously granted, sold, or occupied by homestead settlers, pre-empted, or otherwise disposed of. The right of the plaintiff, the Northern Pacific Railroad Company, to the lands in place along the line of its route as definitely located in the state of Minnesota, and to other lands, to make up deficiencies within those limits, caused by previous grants, sales, reservations, settlements, or pre-emptions to be taken from the indemnity limits, or within the forty-mile withdrawal, will not admit of serious doubt."

And, further, on page 19, 139 U. S., and page 395, 11 Sup. Ct. Rep., this language:

"As to the objection that no evidence was produced of any selection by the secretary of the interior from the indemnity lands, to make up for the deficiencies found in the lands within the place limits, it is sufficient to observe that all the lands within the indemnity limits only made up in part for these deficiencies. There was, therefore, no occasion for the exercise of the judgment of the secretary in selecting from them, for they were all appropriated."

The lands embraced in the schedules attached to the bill are alleged to be within the indemnity limits of the complainant's road, and the moneys in the depository are the proceeds of the sale of some of these lands; and, as I understand the claim of the bill, these lands, including those sold and contracted to be sold, are within the limits referred to in the above quotation from the opinion of the court. The circuit court had no right, outside of the stipulation of the parties, to control the commissioner in the sale of lands, or receive in its depository the moneys paid under the contracts of sale of any of the lands, the title to which was in controversy. All the authority of the court over the

lands, **or the** proceeds from the sales thereof, **is derived from this stip**-ulation.

Such is the *status* of the case, and a large fund being in the hands of the court to which a distinct claim is made by complainant, which fund, under the stipulation, without any proceedings to determine the claim asserted, must be turned over to the defendant, what course in equity must be pursued? Should the court refuse the remedy asked, and turn the property over to the defendant, because of its alleged pecuniary responsibility to pay any decree that may be obtained against it; or must it preserve the subject in controversy in its present condition, and, without settling any question of right, to prevent merely the doing of an act whereby rights in controversy may be endangered? The latter course is in accordance with the principles of equity, particularly where a fund is in the hands of the court by consent of all parties who claim an interest therein. In the light of this decision of the supreme court in 139 U. S. 1, 11 Sup. Ct. Rep. 389, and its interpretation of the charter of the Northern Pacific Railroad, and the resolution of congress relating thereto, applying the principles of equity that this remedy will be granted upon a *prima facie* case, and to keep things as they are for the present, an injunction must be granted to prevent interference with the contracts, moneys, etc., derived from the sale of lands described in schedules attached to the bill. There being in the depository of the court a large sum of money, placed there under this stipulation between the parties to the suit of 1875, and the control of the special commissioner over it ceasing when the mandate in that case is executed, and there also being in the hands of the special commissioner contracts for the unpaid purchase price of lands sold by him, it would seem eminently proper that a receiver be appointed to hold and retain this property, subject to the rules of equity and the laws governing receivers.

I think the duty of the court is plain. Mr. Edward Sawyer, who was the special commissioner agreed upon in the suit of 1875 between these parties, will be appointed such receiver. And it is so ordered.