**In re McDERMOTT et al.**

**KERWIN v. HUMMEL et al.**

**No. 7257.**

Circuit Court of Appeals, Seventh Circuit.

Oct. 28, 1940.

Bernard Rosencranz, of Chicago, Ill., for appellant.

Ross Langdon, Lewis Schimberg, Simon H. Alster, Ely M. Aaron, and Chas. Aaron, all of Chicago, Ill., for appellees.

Before SPARKS and MAJOR, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

A petition was filed by John J. Kerwin in the bankruptcy court, seeking to have $4,000 in bonds owned by him declared a lien against certain assets of the bankrupt estates superior to that of similar bonds held by other creditors of the bankrupts. The referee denied Kerwin's petition, and on affirmance by the District Court, this appeal followed.

Kerwin's petition alleges that the bankrupts, Martin McDermott and Frank McDermott, and their respective spouses, on December 1, 1930, executed two hundred bonds in the nature of promissory notes in the aggregate principal sum of $73,000, maturing on December 1, 1931, and secured same by their certain mortgage of even date, covering real estate then owned by them in the City of Chicago; that said McDermotts continued to own said real estate up to the time of their being adjudicated bankrupts in 1938. Soon after their issue, Kerwin became the purchaser of $14,000 worth of the bonds and other persons became the purchasers of the balance of said issue. On February 9, 1932, the bonds having all matured and being in default the Chicago Title and Trust Company, trustee under the mortgage, filed a bill in the Superior Court of Cook County to foreclose the same, which proceeding was pending and undisposed of at the time of the bankruptcy herein. Petition further alleges that beginning in November, 1933, and thereafter, the McDermotts acquired all of said bonds except $4,000 in principal amount of the Kerwin bonds and subsequently hypothecated same with the appel-

lees, Drovers National Bank of Chicago, the National Cereal Products Company, and Northwestern Malt and Grain Company, creditors of the McDermotts.

The real estate so conveyed as security has subsequently been liquidated by the bankruptcy court and the funds derived therefrom are in the hands of the trustee in bankruptcy. Kerwin asserts that his rights against this fund are superior to the rights of the other holders of said bonds acquired in the manner indicated. The questions for review are:

1. What is the effect of a previous order of the referee in bankruptcy and is the same binding upon petitioner Kerwin?

2. Is the lien of the bonds held by Kerwin superior to that of the other holders?

In reference to the first question, we find that prior to the present petition the Chicago Title and Trust Company, trustee under the McDermott mortgage, filed its petition in the bankruptcy court, seeking instructions with reference to its duties in regard to the pending foreclosure in the Superior Court of Cook County. The trustee in bankruptcy filed an answer and a cross petition, alleging that all of said bonds acquired by the bankrupts as hereinbefore indicated were paid and not purchased by said bankrupts and that the subsequent placing of the same in the hands of the pledgees herein was a preference over other creditors and asserting that said bonds should be surrendered by the pledgees for cancellation. Kerwin also filed an answer and cross petition, claiming that the only bonds outstanding which are a lien secured by the trust deed are those held by him in the principal amount of $4,000 and that all other bonds have been paid by said bankrupts. Upon the issues thus tendered, the referee on April 8, 1939, entered an order holding that in the year 1933, and subsequently, the McDermotts acquired all of said bonds by purchase from the then owners, except the sum of $4,000 so held by Kerwin and other bonds in the principal sum of $600 in the hands of unknown owners; that having so acquired them, they subsequently pledged them with the appellees herein; that none of said bonds were cancelled by the bankrupts but were acquired for the purpose of being renegotiated. To this order Kerwin filed objections and on April 21, 1939, the referee overruled such objections "without prejudice to the right of said Kerwin to claim subordination of other bonds to the bonds held by him," and at the same time gave Kerwin leave to file, within twenty days, his petition for subordination of the other bonds to those held by him. On May 8, 1939, Kerwin's present petition was filed. Apparently it was the intention of the referee that Kerwin's assertion of priority was not to be affected by his order of April 8, 1939.

Undoubtedly Kerwin placed this same interpretation on the language of the Referee—"without prejudice to the right of said Kerwin to claim subordination of other bonds to the bonds held by him," and rested secure in his right to adjudicate this question upon any proper basis and supported by any reason whatsoever. Indeed, the Referee at the same time gave him leave to file his petition for subordination and this he promptly did seventeen days later. Had Kerwin interpreted the preceding order to mean that he could not urge in support of his present petition the assertion that when McDermotts reacquired the bonds a legal and equitable merger was effected and that the subsequent negotiation of the bonds after maturity was not effective as to him, he undoubtedly would have chosen to file a petition for review of such order rather than filing the present original petition. He undoubtedly believed that he was to have his day in Court, on this question, unhampered by the order of April 8th. True, the Referee had found in the matter before him at that time that said bonds had not been paid, but that McDermotts had reacquired them for the purpose of renegotiation.

It would be a somewhat unusual application of the doctrine of res adjudicata to hold that Kerwin could now assert priority of his bonds but that one of the reasons to be urged in support of priority had been taken from him by the previous order of the Referee. We think the record discloses no such intention at the time on the part of the Referee or the parties affected by such order and to now hold that the order of April 8th was a bar in the nature of res adjudicata against the present petition of Kerwin would in our judgment be inequitable and unfair. Ordinarily a judgment or decree without prejudice never works an estoppel nor acts as a former adjudication. Robinson v. American Car & Foundry Co., C.C., 142 F. 170; Northern Pacific R. Co. v. St. Paul, M. & M. Ry. Co. et al., C.C., 47 F. 536.

Appeal from such an order is doubtful. Northern Pacific R. Co. v. St. Paul, M. & M. Ry. Co. et al., C.C., 47 F. 536. Moreover the intention of the parties is further evidenced by the various answers to petitioner's present pleading. No issue of former adjudication is there raised, it being suggested for the first time in the present report of the referee and the subsequent order of the District Court. It was, therefore, not in issue before the referee or the court and the order of the District Court in this respect is broader than the pleadings. Regardless, however, of this question of pleading, we think a court of equity should not, in view of the language used by the referee in the order of April 8, 1939, bar a full consideration of Kerwin's present petition, based upon any proper ground.

We therefore, pass, unhampered by the referee's order of April 8, 1939, to the consideration of the effect of the acquisition by the McDermotts of the bonds in question from the original holders after maturity and their subsequent transfer to the appellees.

 Where the maker of a promissory note, secured by real estate mortgage, subsequently acquires the note while remaining owner of the real estate, the law of Illinois, has long recognized the doctrine of merger. This is a doctrine founded primarily upon the proposition that the obligor cannot at one and the same time be both obligor and obligee. The early cases of Donk v. Alexander & Taussig, 117 Ill. 330, 7 N.E. 672; Drury v. Holden, 121 Ill. 130, 13 N.E. 547; Forthman v. Deters, 206 Ill. 159, 69 N.E. 97, 99 Am.St.Rep. 145; Lanphier v. Desmond, 187 Ill. 370, 58 N.E. 343, recognize this principle in one form or another. In equity this is not an unalterable rule but "equity will prevent or permit a merger, as will best subserve the purposes of justice," Miller v. Whelan, 158 Ill. 544, at page 555, 42 N.E. 59, at page 62.

 .McDermotts secured their obligations by a mortgage upon real estate which they then owned and continued to own at all pertinent times and when they reacquired the evidences of the primary obligations, in the absence of any showing to the contrary, they would be presumed to have done so by payment. The evidence shows that the McDermotts took up after maturity $10,000 of Kerwin's holdings, paying him in cash with no indication from them that they were expecting to re- negotiate the bonds. Kerwin certainly was justified in assuming that they were making payment of a past due obligation and justified in assuming that to that extent at least the security for his remaining obligations of $4,000 had been enhanced. The McDermotts likewise acquired most of the remaining outstanding bonds, and whatever may have been their secret intention in the matter, one in the position of Kerwin without knowledge of their purpose was warranted in assuming that the bonds were being retired. During all of this time and for some six years the foreclosure suit was pending in the State Court. What delayed its progress we do not know; we can only assume that with the bonds being taken up by McDermotts, no urgent reason remained for pressing same. With Kerwin retaining only $4,000 of his original $14,000 of the bonds, and with others being taken up by the maker, he undoubtedly believed his remaining bonds adequately protected and may have been deterred from pressing the foreclosure of the mortgage by this added feeling of security. The facts do disclose that the foreclosure suit was allowed to slumber until bankruptcy overtook the McDermotts.

We now find that instead of retiring the bonds as they took them up, they renegotiated them to the appellees after maturity. Whether the bonds thus negotiated were valid or not as between the McDermotts and the subsequent pledgees, we need not here decide, for we are well convinced that those bonds remaining in the hands of Kerwin are clothed with an equity superior to the bonds now in the hands of appellees.

Appellees say that there being nothing inherently iniquitous about the existence of commercial paper after maturity, equity should in this case keep the obligation on the bonds alive in the hands of appellees, in order that Kerwin be not unjustly enriched at the expense of appellees. We do not accept this analysis of existing equities. Kerwin is the holder of $4,000 of the original issue and in that respect is on a par with the predecessors in title of appellees, to-wit, the original holders of those obligations before being reacquired by the McDermotts. Those original holders have had their obligations satisfied in full by the action of the makers and they have already received the satisfaction that Kerwin is now demanding for his unpaid bonds. We think appellees have mistakenly undertaken to appraise Kerwin's equities

586

with appellees rather than with appellees' predecessors in title. Consequently, we perceive no inequity if Kerwin, the original holder prevails over appellees.

Counsel for appellees rely upon the cases of American Brake Shoe & Foundry Company v. New York Rys. Co., D.C., 277 F. 261; Westinghouse Electric & Manufacturing Co. v. Brooklyn Rapid Transit Co., D.C., 288 F. 221; and In re 54 First Mortgage Bonds, 15 S.C. 304, in which courts have recognized that under the equities there present, bonds reacquired by a corporation and subsequently negotiated were not without standing. In most instances the subsequent negotiations have been before maturity. In the South Carolina case, the soundness of the decision may well be challenged, as indeed it has been in a subsequent decision of the same court in Ex Parte Benson, 18 S.C. 38, 44 Am.Rep. 564. The law governing the present situation is, of course, the law of Illinois. So far as appellees are concerned, they can in no event have any better right or title in the bonds they now hold than the McDermotts had after reacquisition. The present proceeding is equitable in character, and we are convinced that Kerwin's remaining bonds are clothed with an equity superior to that attaching to the bonds held by appellees.

The order of the District Court is reversed and the cause remanded for further proceedings consistent herewith.

Reversed and remanded.