A. H. MILLER *et al.*

*v.*

MARGARET WHELAN.

*Filed at Springfield October 14, 1895.*

1. APPEALS AND ERRORS—*formal exceptions to rulings need not be taken in chancery.* Exceptions need not be taken to the various decisions of the court made in the progress of a chancery cause, since the entire proceedings are matter of record, and subject to review on appeal or error.

2. SAME—*errors in favor of party complaining are harmless.* A party cannot complain, on appeal, of errors operating to his advantage.

3. MERGER—*equity will prevent merger to promote justice.* A court of equity will prevent or permit a merger, as will best subserve the purposes of justice and the actual and just intention of the parties; and it will prevent a merger for the purpose of thwarting the accomplishment of a fraud, or other unconscientious wrong.

4. NOTICE—*to husband, acting as the wife's agent, is notice to the wife.* A woman for whom her husband acted as agent in the entire transaction, in which a deed was taken in her name, is chargeable with notice of all facts within his knowledge, as to the title to the property and his relations to the other party to the transaction.

5. ATTORNEYS AT LAW—*one assuming the character of a lawyer must exercise a lawyer's good faith.* The fact that a person who assumed the character of a lawyer and fraudulently imposed upon a client in that character was not in fact a lawyer does not release him from the duty that in his assumed character he voluntarily took upon himself, but he is bound to the utmost good faith and fair dealing toward the client.

APPEAL from the Circuit Court of Moultrie county; the Hon. EDWARD P. VAIL, Judge, presiding.

SPITLER & HUDSON, and HARBAUGH & WHITAKER, for appellants.

ROBERT M. PEADRO, for appellee.

Mr. JUSTICE BAKER delivered the opinion of the court:

This is an appeal taken by A. H. Miller from a decree rendered by the circuit court of Moultrie county in a cause in equity wherein Margaret Whelan was complainant and said Miller and numerous other persons were parties defendant. Both errors and cross-errors have been assigned.

Margaret Whelan, and Harvey M. Whelan, her husband, were owners and tenants in common of a farm in Moultrie county containing ninety-eight and one-half acres of land. They resided on this farm with their family, and it was encumbered by a mortgage given by them to one A. H. Antrim, to secure an indebtedness of $500 and the interest thereon. Said Harvey died intestate in March, 1888, leaving said Margaret as his widow and their seven children as his heirs-at-law. He left only $30 in cash on hand and but little personal property, and his widow became the administratrix of his estate. She continued to live on the farm with her infant children, and seems to have been hard pressed to realize enough of income therefrom to maintain the family, pay taxes and keep down the accruing interest on the mortgage, which was payable semi-annually. She arrived at the conclusion that it would be better to sell enough of the land to pay off the mortgage, and keep the rest of the farm to live on with her children. With this end in view she went to Sullivan, the county seat, to get a lawyer to fix it up. She called at the law office of Smyser & Miller, and the result was, that on July 30, 1889, a bill for the partition of the undivided one-half interest in the ninety-eight and one-half acres of land of which Harvey M. Whelan had died seized, was filed in the circuit court,

the said Margaret Whelan, and the infant children and heirs of the deceased, who sued in that behalf by Margaret Whelan, their next friend, being joined as parties complainant.    (See *Roodhouse* v. *Roodhouse*, 132 Ill. 360.) Such proceedings were had in the partition suit as that a final decree was rendered therein at the November term, 1889, for the sale of the undivided one-half interest therein, subject to the homestead of said Margaret Whelan.

It may here be stated, by way of explanation, that A. H. Miller, the appellant, was one of the two members of the co-partnership that transacted law business under the firm name of Smyser & Miller; that he was never admitted to the bar or had any license to practice law, either in this State or in any other State, and that at the time the co-partnership was formed, in January, 1889, he had never read a single law book.  And it may also be stated, for like purpose of explanation, that at the time of the transactions involved in this case appellee was wholly ignorant of business and legal matters; that it appears, both from her own testimony and that of other witnesses, that she has a good memory for facts and for details, and that it appears, both from the expert testimony of physicians and from the testimony of her neighbors, that she is lacking in judgment, and is regarded as mentally weak and incapable of transacting and conducting business affairs.  As one of the witnesses, Dr. Kellar, who at the time of his examination was a physician and surgeon sixty-three years of age, expresses it, her mind could be impressed so as to retain details, yet was too weak to comprehend relations.

After the decree, and after the master had advertised the land for sale, appellee had an interview with appellant at his office.  He testifies: "I asked her if she had the money to purchase the farm in case it sold for less than its worth.  She said she did not have any money. I told her then that I would furnish the money—buy the farm for her; would buy it in my own name, and would

sell it and give her the proceeds outside of what money I was out, and the interest on the same, but before I would do that she would have to deed to me her interest in said premises. I told her I would enter into a contract to do what I above have stated." She testifies in regard to the contract: "It was written out. I knew nothing about it until Mr. Miller called on me to sign it. I asked him if it could not be fixed any other way, so I could buy it in myself. He said no—not unless I had money. He said he would buy it in for me and make it all right." And further testifies: "He said it could not be done in any other way. I told him I didn't understand it. He said it was the only right way to do it." And in regard to the deed that she executed on the day of this conversation, she testifies that appellant said it was "nothing but a sham deed, for the purpose of protecting the land for me. * * * He said it was not to be recorded. It was simply a form, so he could buy the land in for me." Samuel Whelan, a son of appellee, fourteen years old, testifies that he was present at the conversation, and that appellant "said that it was a sham deed to protect him, for she didn't have the money to buy it in with. She said that she didn't think that there was any use of making that deed, but he said that that was the only way it could be done, for he knew the law and she didn't. She said if it had to be done, all right."

On the day of this interview, December 23, 1889, appellee executed and delivered to appellant a deed conveying all her interest in the land and waiving and releasing her homestead, and at the same time the parties signed a certain agreement in writing. By said contract appellant agreed to buy the land at the master's sale on January 4, 1890, and take control of the same for six months, for the sole and only purpose of effecting a sale thereof on the best terms practicable, such sale to be subject to the approval of appellee. It was further agreed that if a sale was made within the six months,

then out of the moneys thereby realized appellant was to retain all the money paid out by him for the purchase made at the master's sale, with eight per cent interest thereon, and also reasonable compensation for making the sale, and pay the balance of the proceeds to appellee. It was further agreed that in case appellant was unable to effect a sale within the six months, then, at the expiration of that time, appellee was to pay to appellant all moneys paid out by him in the transaction, with eight per cent interest thereon, and appellant was to convey the premises to appellee. And it was also provided in the agreement, that if appellee was unable to refund the moneys and interest at the end of the six months, then and in that case appellant was to take the note of appellee for such moneys and interest, said note to bear eight per cent interest, and to run not less than two years from the date thereof, and to be secured by a mortgage on the premises.

At the master's sale made on January 4, 1890, under the decree in the partition suit, the undivided one-half interest in the lands that was vested in the husband of appellee at the time of his death was struck off and sold to appellant at $620, that being the amount of the Antrim mortgage plus the costs and expenses in said partition suit, and $50 of these costs was the fee of Smyser & Miller. Appellant did not pay to the master the money to settle the mortgage, nor did he or any one else ever pay or satisfy said mortgage, but it remained a lien upon the premises until April, 1893, when it was foreclosed by the mortgagee, and so it is plain appellant never paid to the master, on his bid of $620, to exceed $70 in money.

On the 24th day of February, 1890, the master in chancery executed and acknowledged a deed conveying to appellant the premises that had been struck off and sold to him as above stated, and on the same 24th day of February, 1890, appellee executed and delivered to appellant a warranty deed, in which she conveyed and warranted

to Joanna Miller, the wife of appellant, A. H. Miller, not simply an undivided interest in said lands, but the entire interest in the whole of said lands, and waiving her rights of homestead therein. The acknowledgment to this deed was taken by appellant, as a notary public, and the deed was filed for record on the same day it bears date.

In regard to this latter transaction appellee testifies that at the time she signed the deed to his wife, A. H. Miller "told me it was necessary that I should sign it; that he also had a good deed that the land was his; that he wanted it deeded to his wife. I told him it was hard to have to give it up, and I told him when I made the sham deed that he said it did not amount to anything. He said I would have to sign that or I would not get anything. He said he would give me $1300 for it, and he would pay the mortgage and expenses out of it and give me what was left. He would also sell it for two-thirds more than he paid for it, before the year was out." And she testifies on cross-examination: "It was not my price on the land. He took it at his own price. I had nothing to say about it at all. He said if I did not take that I would not get anything, and I would lose the farm entirely. I had to do as he said or I would lose everything. * * * I told Mr. Miller I did not want it sold at all,— only enough to pay the mortgage. Mr. Miller said I was already in his power and I would have to do as he said. * * * Mr. Antrim told Mr. Miller to tell me that I could let the mortgage run on as long as I paid the interest. Mr. Miller did not tell me anything about it until Mr. Steele drawed his attention to it. That was after he had the farm in his hands. He made me believe that Mr. Antrim would sell the farm for the mortgage. Whenever I asked him questions about it he would say, 'I understand the law and you don't.'"

Samuel Whelan, the son of appellee, already mentioned, testifies that he was present when the deed was made by his mother to Joanna Miller, and he says:

"A. H. Miller said he had a good deed for the place, but he wanted to deed the place to his wife. She said it looked mighty hard to have to give up the place. A. H. Miller said that if she didn't deed the land to his wife she wouldn't get anything for the place."

On March 1, 1890, appellant, by his deed of that date, quit-claimed all his interest in the lands to his wife, Jo-anna Miller, and on or about the same day he rented the farm to one Rush Plummer, and induced him to move forthwith into the house on the farm, still occupied by appellee and her family, and one or two days thereafter, on March 3, 1890, said Plummer, by the procurement of appellant, moved appellee and her family off of the farm and into a house in Sullivan that appellant had rented, and for which he had paid $8, as a month's rent in ad-vance. On March 7, 1890, appellant purchased from one Spitler a house and two lots in Sullivan for $460, and had the same conveyed by Spitler to appellee, and induced her to move, with her family, to said premises.

The original bill herein was filed by appellee on June 13, 1890, and on November 18 of that year an amended bill was filed, and in April, 1891, a supplemental bill was filed. All necessary parties seem to have been made defend-ants in the suit, and answers and replications were duly filed. Pending the litigation, the defendant Joanna Mil-ler died intestate, and Robert C. Miller, her only child and heir-at-law, was brought into the suit as a defendant. The cause was referred to a special master in chancery to take the testimony, and report the testimony so taken, and his conclusions as to both law and fact, to the court. The said master made report, finding against the validity of the partition proceedings and sale made thereunder; that the deed from appellee to appellant was procured by fraud and circumvention; that the deed from appellee to Joanna Miller, the wife of appellant, was obtained by means of threats and intimidation; that the whole of the purchase price of the lots in Sullivan was paid by A. H.

Miller; that Margaret Whelan was a person of weak mind, and incompetent to attend to ordinary business; that at the time all of the different transactions took place A. H. Miller was acting as her counsel and adviser, and represented to her that he was a lawyer and would attend to her business for her and would protect her interests, but that he betrayed her confidence and trust, and finding against the validity of the deed from A. H. Miller to Joanna Miller, and against the validity of the deed from Margaret Whelan to her three infant sons, and against the validity of the contract between A. H. Miller and Margaret Whelan. The conclusions of said master were, that all the proceedings in the partition suit, the contract and the several deeds should be set aside and declared null and void, that the lots in Sullivan should be held to be the property of A. H. Miller, and that the master in chancery should make to him a deed therefor, etc.

The cause was heard by the court at the November term, 1892, and the court in part sustained and in part overruled the objections and exceptions taken by A. H. Miller and others of the defendants to the report of the special master, and in lieu of some of the master's findings found and decreed that the transactions and instruments, and the title thereby conveyed, were a mortgage, from which the complainant was in equity entitled to redeem upon equitable terms to be thereafter determined by the court, and that the lots in Sullivan should be restored to A. H. Miller, etc., and the court again referred the cause to the master to take additional evidence and state an account, etc. A second decree was entered in the suit at the November term, 1893, upon the coming in of the master's second report and the exceptions thereto. It was, among other things, ordered and decreed by the court that defendant A. H. Miller should pay to the complainant the sum of $47.63, and all costs of suit, and that execution should issue therefor, and that he should execute to the complainant a deed for the undivided one-

half of the lands, and to the children of Harvey M. Whelan, deceased, for the other undivided one-half, and that in case of his default therein the master in chancery should execute such deeds; that the master in chancery should also execute a deed conveying to complainant and said children all the interest of Robert C. Miller, minor defendant, in said lands, and that complainant and said children should be entitled to possession, and writ of possession might issue, etc. Of the defendants in the court below A. H. Miller alone appeals and assigns errors.

In answer to suggestions made by counsel for appellee it may be said, that since the entire proceedings in chancery causes are matter of record, and subject to review on appeal or error, it is not required by the rules of chancery practice that exceptions should be taken to the various decisions of the court made in the progress of such causes. (*Smith* v. *Newland,* 40 Ill. 100; *Chicago Artesian Well Co.* v. *Connecticut Mutual Life Ins. Co.* 57 id. 424.) And may further be said, that since, upon the theory of the defense made below, Joanna Miller died seized of the lands here in controversy as absolute owner in fee, it follows that A. H. Miller, her surviving husband, has a personal interest in her title to the extent of his life estate of dower in said lands, and is therefore necessarily injured or prejudiced by the decree that was rendered in regard to such title, and may assign errors upon that branch of the case.

It is urged by appellant that the bills in this case are framed upon the theory that appellee was induced by fraud and circumvention to execute the deeds by which title is claimed, whereas the decree rendered was that said deeds and title were in equity a mortgage, from which appellee was entitled to redeem on equitable terms, and that this was in contravention of the well settled rule that when parties seek relief in equity they must recover according to their bills and upon the grounds therein stated. We will assume, for the purposes of the case, that the original bill was simply a bill seeking to

have the deeds and other evidences of title set aside on the ground of fraud and circumvention. But soon after it was filed, and on November 18, 1890, an amendment was filed to the original bill, in and by which amendment the entire original bill, save the first three lines thereof and the prayer for summons, was stricken out and the averments set out in said amendment substituted therefor. In the bill as so amended all the supposed facts of the case were stated in detail, and the various pleadings, instruments and proceedings in the partition suit, and the several deeds, set out and referred to as exhibits, and made parts of said bill. Said amended bill contained this averment: "Oratrix further represents unto your honor that she now tenders to the said A. H. Miller a deed to the premises in the city of Sullivan, Illinois, as well as the $40 in money, and the further sum of $510, being the amount paid to satisfy the mortgage held by A. H. Antrim, as aforesaid." And said bill, in addition to its prayers for special relief, contained this general prayer: "And that your oratrix may have such other and further relief in the premises as equity may require and to your honor seem meet." In April, 1891, appellee filed in the court a supplemental bill, in which she states that she is informed, and states the fact to be, that since the filing of her bill there was filed in the office of the recorder an instrument purporting to be a deed of conveyance executed by her to Samuel T., Bartholomew and Everett Whelan, three of her minor children, in consideration of natural love and affection, for the lots in the city of Sullivan, and she avers therein, that owing to disease the condition of her mind for several years has been such as almost wholly disqualifies her for the transaction of business, and that she at times follows the advice of others without any consideration on her part whatever; that immediately after the institution of the suit the said A. H. Miller set about harassing and tormenting her, and threatening to take from her the little property she then

had; often visiting her house after he had been forbidden the premises, and informing her of her dependent condition, and telling her he intended taking the Spitler property from her; that he had the same in his power; that he had obtained the farm and intended getting all the remainder of her property; and that by reason of such threats, etc., and her condition of health, and the fact she could no longer labor, and was dependent upon the charity of her neighbors for the food necessary to keep her and her children from starving, she was at times deprived of her mind and her reason, and that it was while she was so deprived of her reason and judgment that the deed to her three sons was made and filed; and she asks that upon a delivery to A. H. Miller of a deed for the lots in Sullivan, said A. H. Miller and Joanna Miller be decreed to convey all their right, title and interest in and to the farm, and prays for such other and further and different relief as equity may require and that to the court seems meet. A second supplemental bill, filed in 1892, makes Robert C. Miller, the only child and heir-at-law of the defendant Joanna Miller, who had died *pendente lite*, a party defendant, and again prays as theretofore prayed, and for a decree that said Robert C. has no right, title or interest in and to the premises.

We think that the bill, as changed and modified by the amendment to the original bill and by the supplemental bills, is in substance a bill to redeem from an equitable mortgage, as well as a bill to set aside deeds for fraud and circumvention, and afforded a sufficient foundation upon which to base the decree that was rendered by the court. The prayers of the bills were broad enough to cover the relief granted, and the facts to justify the granting of such relief sufficiently appeared from the statements made in the bills, and from the exhibits which were made parts of appellee's case as pleaded. In our opinion the error alleged in that regard is not well assigned.

It is insisted that the evidence does not support the decrees. It seems to us that it is very plain that the deed and written contract of December 23, 1889, construed along with the other instruments and proceedings connected therewith, constituted an equitable mortgage. In fact, we understand that much to be conceded by appellant in his reply brief. But it is claimed that the title of Robert C. Miller is based solely upon the deed made by Margaret Whelan directly to Joanna Miller, and the evidence does not tend to prove that deed was intended as a mortgage. And in another place the claim is, that the deed by A. H. Miller, together with the conveyance by Margaret Whelan to Joanna Miller, caused a merger and vested the title to the farm in controversy in Joanna Miller, now deceased, in fee simple.

A court of equity will prevent or permit a merger, as will best subserve the purposes of justice and the actual and just intention of the parties; and it will prevent a merger for the purpose of promoting substantial justice, or to thwart the accomplishment of a fraud or other unconscientious wrong. The rule that the intention is the controlling consideration will not have application in a court of chancery as being necessarily paramount to all other considerations, and that rule will not be permitted to be used for the accomplishment of fraud, or of injustice and wrong to others, under the color of legal forms, and that court will not apply the technical doctrine of merger where the just interests of the parties require a mortgage to be kept alive. See 15 Am. & Eng. Ency. of Law, title "Merger;" 2 Pomeroy's Eq. Jur. sec. 794; *Fowler* v. *Fay*, 62 Ill. 375; *McClain* v. *Weise*, 22 Ill. App. 272.

From the evidence we do not believe that Joanna Miller was the real purchaser of the farm, or at the time of these transactions knew anything about its being bought, or furnished any part, or agreed to furnish any part, of the consideration therefor, but, on the contrary, are satisfied therefrom that her husband had the second

deed made to her and had the title placed in her name
for the purpose of aiding in the accomplishment of his
own fraudulent and selfish purposes and for his own
gain. It does not appear that the wife had any separate
property or money or means of her own. She did not
testify as a witness in her own behalf. And as to A. H.
Miller, his testimony seems to look in both directions, so
far as the identification of the real and actual purchaser
is concerned. In regard to his testimony as a witness
we may make the general remark, that it is so obviously
evasive, unfair and disingenuous that we can place but
little, if any, reliance in it.

But even if Joanna Miller is to be regarded as the real
purchaser and owner under the deeds made to her, then
it is perfectly manifest that her husband was her general
agent in and about the entire transaction. The rule is,
that notice to an agent touching the subject matter of
his agency or in regard to the transaction in which he
is engaged is·notice to the principal. (*Bryan* v. *Primm*,
Breese, 59; *Doyle* v. *Teas*, 4 Scam. 202; *Williams* v. *Brown*, 14
Ill. 200; *Singer Manf. Co.* v. *Holdfodt*, 86 id. 455.) And this
rule applies where the agent is the agent of both parties
at the same time, as well as where he is the agent of but
one. (*Bank of New Milford* v. *Town of New Milford*, 36 Conn.
93.) It follows, then, that when appellee, on February
24, 1890, executed the deed to Joanna Miller and deliv-
ered it to her agent, A. H. Miller, said Joanna Miller
had notice of all facts relating to the farm and the title
thereto that were within the knowledge of such agent,
and was chargeable with notice of the relation that said
agent sustained to appellee and of the duties that he
owed to her in regard to said farm. She cannot, there-
fore, stand in a court of equity in the attitude of an inno-
cent purchaser for value without notice of the defects
in her title, nor can those who are her privies and have
merely succeeded to her rights. The position and rights
of both are simply those of either a mortgagee or those

of a mere trustee under an equitable mortgage. A. H. Miller had represented himself to appellee as an attorney at law, and she, relying on these representations, had employed him as such in and about the business of clearing the farm in which she had an interest, of incumbrances, and securing it, or as large a part of it as practicable, to her and her children. That he was not a lawyer, but had fraudulently imposed upon her in that regard, did not release him from the duty that in his assumed character of a lawyer he had voluntarily taken upon himself. By so assuming, in respect to her, the relation of an attorney to his client, he bound himself to the utmost good faith and fair dealing towards her, and for the preservation of her rights and interests. He was recreant to his trust, and fell far short of performing his duty. He, himself, is estopped by his representations and promises from denying that he owed to appellee the duty of an attorney to his client. But as between appellee and Joanna Miller, and those in privity with her, the case stands upon the ground of notice. She having notice of all the facts, and of the duty appellant owed to appellee, and of the breach of that duty, took the land subject to the rights and equities of appellee.

It is claimed that the decree rendered by the circuit court erroneously sets aside and annuls the deed made by Spitler and wife to Margaret Whelan for the lots in Sullivan. It seems to us that counsel misapprehends the scope of that decree. Among the conclusions reported to the court by the special master were these: "That the deed from Frank Spitler and wife for the city property, to Margaret Whelan, be set aside, and that the property be held as the property of A. H. Miller;  *  *  *  that the deed to the property in the city of Sullivan,  *  *  *  from Margaret Whelan to Samuel Whelan, Bartholomew Whelan and Everett Monroe Whelan, be set aside and be declared null and void, and that the master in chancery make to the said A. H. Miller a deed for said property,

\* \* \* and that the said A. H. Miller have the possession of the said city property, and all the rents and profits, from the first day of March, 1892." And the record shows that upon the hearing of the exceptions to the report of the master, the order and decree were that the court "doth sustain the exceptions in part and overrules the same in part, and in lieu of the master's findings herein the court finds that the defendant's title of and to the following tracts of land, to-wit, etc., is in equity a mortgage, from which the complainant is entitled to redeem upon such equitable terms as the court may hereafter determine; and the court further finds that the defendants are entitled to have the said lots 1 and 2, of block A, of Patterson and Snyder's addition to the city of Sullivan, restored to them." Reading the report, which was incorporated in and made a part of the decree, along with the order of the court made in regard thereto, and in the light that each throws on the other, it is plain that the exceptions were sustained merely to that part of the report in regard to the lots in Sullivan which announced the conclusion that the deed from Spitler and wife to Margaret Whelan should "be set aside," and substituted in lieu thereof the conclusion that said lots should be "restored" to the real and equitable owner thereof, and left standing and approved the conclusions of the master that said lots "be held as the property of A. H. Miller," "and that the master in chancery make to the said A. H. Miller a deed for said property, \* \* \* and that the said A. H. Miller have the possession of the said city property." The decree is very inartificially drawn, but its true intent and meaning are obviously as above indicated. It evidently proceeds, in respect to the lots in Sullivan, upon the theory of a trust in regard to the title to said lots, wherein Margaret Whelan was trustee and A. H. Miller *cestui que trust,* and is based on the allegations of the supplemental bill that Margaret Whelan held the said property in trust for the defendant

A. H. Miller, since he, said Miller, purchased the same from Frank Spitler, as aforesaid, and had the deed for such property executed by said Spitler in the name of your oratrix, as grantee.

There is another sufficient answer to the allegations of error under consideration. It was beneficial to appellant that he should be decreed to be the owner of the lots in Sullivan and entitled to the possession of them, and that the master should be directed to execute to him a deed for them. It is a well settled rule that a party cannot avail of error which does not operate to his prejudice, and, *a fortiori*, that he cannot take advantage of errors which operate to his advantage.

The conclusion must be that the assignments of error in regard to the Spitler lots are not well made.

Numerous errors and cross-errors are assigned by the respective parties to this appeal, questioning the rulings and orders made by the chancellor in stating the account between said parties, which resulted in finding a balance of $47.63 due from appellant to appellee, and in a decree for that amount. The testimony in regard to most of the items of account is conflicting, and the result depends largely upon the weight given to the opposing opinions of numerous witnesses upon questions of quantity, value, etc. The conclusion reached can, at best, be but an approximation to the true and just amount due from one party to the other. Our examination of the record has led us to the conclusion that the decree made below probably reaches as correct and satisfactory a result as is attainable. We therefore do not feel inclined to disturb that decree, made in the matter of the accounting.

We find no error in the record that seems to demand the reversal of the decrees that were rendered in the circuit court, and they are affirmed.

*Decree affirmed.*