PETTIGREW *v.* PETTIGREW.

Opinion delivered January 17, 1927.

1. DIVORCE—RIGHT TO FILE CROSS-COMPLAINT.—In an action by a wife for divorce, the husband may file a cross-complaint for divorce on the ground of cruel treatment, though his cause of action accrued since the commencement of her suit.

2. DIVORCE—FILING CROSS-COMPLAINT—PREJUDICE.—As a husband's cause of action for divorce could have been the basis of an independent action by him and consolidated with a prior suit by her against him, under Crawford & Moses' Dig., § 1081, it was not prejudicial error to permit him to assert it by a cross-complaint in her suit.

3. DIVORCE—EVIDENCE.—Evidence *held* to sustain a finding against a wife on her prayer for divorce, and in favor of the husband on his cross-complaint.

4. LIMITATION OF ACTIONS—AMENDED PLEA.—It is within the court's discretion to permit an amendment of the pleadings so as to bring in an additional defense, such as the plea of the statute of limitations.

5. LIMITATION OF ACTIONS—LAW APPLICABLE.—Questions arising upon the statutes of limitation are governed by the law of the forum.

6 . APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— A chancellor's finding of facts is conclusive on appeal where the evidence is evenly balanced or where it is not clearly against the preponderance of the testimony.

Appeal from Union Chancery Court, Second Division; *Neill C. Marsh,* Special Chancellor; affirmed.

*Powell, Smead & Knox* and *J. W. Warren*, for appellant.

*Allyn Smith,* for appellee.

McCULLOCH, C. J.  The plaintiff, Mabel Pettigrew, and defendant, R. L. Pettigrew, intermarried, at Shreveport, Louisiana, in September, 1920, and lived together until March, 1924, when the plaintiff left the defendant for causes which she set forth as grounds for divorce. Each of the parties had been married before, and each had children.  The plaintiff has two daughters, who were approaching womanhood, but who were yet school-girls during the time that these parties lived together. They resided at Shreveport for a time after the intermarriage, and afterwards moved to Union County, and resided at Smackover until the separation.

The defendant built a hotel at Smackover, in conjunction with a man named Moore, and the same was operated by defendant, he and his wife and her two daughters residing at the hotel, and were there up to the time of the separation.  In April, 1924, just about a month after the separation, plaintiff instituted this action against the defendant for a divorce and for alimony and suit money, and also to recover sums of money alleged to be due her by her husband for money loaned prior to their intermarriage.  These sums were alleged to have been loans in the early part of the year of 1914, and evidenced by promissory notes falling due at various times up to the autumn of 1914.  Plaintiff exhibited with the complaint four of these notes, aggregating $3,875.

The grounds set forth in the complaint for a divorce were that defendant had been "guilty of such cruel and barbarous treatment as to endanger the life" of the plaintiff, and that he offered such indignities to the person of the plaintiff as to render her condition intolerable.  The complaint alleged acts of cruel conduct and various indignities, such as abusive language and physical violence.

It was also alleged in the complaint that the defendant had made indecent proposals to the plaintiff's daugh-

ters. The complaint was answered by defendant with denials of all the allegations with respect to misconduct on his part, and there was also a denial of any indebtedness to the plaintiff. He admitted that he had borrowed small sums from the plaintiff before their intermarriage, but asserted that he had paid the same in full.

The complaint also set forth a list of items comprising, in part, furniture in the hotel, which plaintiff claimed to be her property, and in the answer of the defendant it was conceded that certain items in the list constituted property owned by plaintiff, but there was a denial of plaintiff's ownership of other items.

On February 2, 1925, the plaintiff filed an amended complaint, reiterating the allegations of the former complaint and containing others with respect to misconduct of the defendant, also alleging that the plaintiff had, subsequent to the intermarriage with defendant, made loans of money to him aggregating $3,100, which sums remained unpaid, and for which there was a prayer for recovery. It was also alleged that the loans made at Shreveport in 1914 aggregated the sum of $6,000, and that evidences of the indebtedness, in the form of promissory notes, were executed to plaintiff by defendant, but that some of these had been lost, only those exhibited with the original complaint remaining in possession of plaintiff. It was also alleged that defendant had, by threats and violent conduct, secured from plaintiff a diamond ring and a diamond stud of the aggregate value of $500, which he was wrongfully withholding, and there was a prayer for the recovery of those items.

Defendant's answer and cross-complaint denied all the allegations with respect to misconduct on his part toward plaintiff or her daughters, and all allegations with respect to the indebtedness and the ownership of the diamond ring and stud, and the statute of limitations was pleaded against the notes and other alleged indebtedness for money loaned in the year 1914. This plea of defendant was also made a cross-complaint against the plaintiff, alleging gross misconduct of plaintiff which amounted to

such cruel and barbarous treatment as to endanger his life, and there was a prayer for divorce from the bonds of matrimony.

It was alleged that, on March 22, 1925, plaintiff came to the hotel in Smackover, which the defendant was operating, and made a murderous assault upon him with a pistol, firing several shots at him. This last plea was objected to by plaintiff, and the objection was overruled, whereupon the parties stipulated that answer to the cross-complaint be waived and the allegation treated as denied.

The court heard the evidence, and rendered a decree against the plaintiff on her prayer for divorce, but granted a divorce on the cross-complaint of defendant. The court found for the plaintiff for the recovery of the sum of $3,100, alleged to have been advanced or loaned after the intermarriage, and for the recovery of $500, the value of the diamonds, and also for the recovery of the hotel furnishings set forth in exhibit to plaintiff's complaint, and an allowance was also made by the court for attorney's fees. The court found against the plaintiff on the prayer for recovery of money loaned at Shreveport, on the ground that the claim was barred by the statute of limitations. Each party has duly prosecuted an appeal to this court.

It is insisted by counsel for plaintiff, in support of her appeal from the decree for divorce rendered on the cross-complaint, that a cause of action which accrued to the defendant and cross-complainant after the institution of the action could not be pleaded, and that the court erred in overruling plaintiff's objection and in granting the divorce on the cross-complaint. This contention is not well founded, for the cause of action set forth in the cross-complaint was a separate one, in favor of the defendant against the plaintiff, which was mature at the time the cross-complaint was filed, and the defendant had the right to assert it against the plaintiff in this action, even though it had accrued since the commencement of the original action. Nelson on Divorce and Separation,

§ 744; *Martin* v. *Martin,* 33 W. Va. 695, 11 S. E. 12; *Wilson* v. *Wilson,* 40 Iowa 230; *Armstrong* v. *Armstrong,* 27 Ind. 186.

Mr. Nelson, in the section cited above, says: "It is convenient and practical to adjust all the marital rights of the parties in one proceeding and thus avoid a multiplicity of suits. No useful purpose could be subserved by compelling the defendant to prosecute separate proceedings for divorce or annulment of marriage when the issue in the first proceeding will involve the validity of the marriage and the causes for divorce set up in recrimination, and must be proved by substantially the same evidence." And in the same section the author gives his approval to the statement of law contained in the authorities cited above.

In the case of *Slocum* v. *Slocum,* 86 Ark. 469, 111 S. W. 806, we cited with approval the section above cited from Mr. Nelson, but the question of right to set up in a cross-complaint a cause of action which arose subsequent to the commencement of the original action was not involved. In that case we said:

"It is recognized and permissible practice for the defendant to file a cross bill and ask independent relief in divorce suits. When he does so, his suit is as separate and distinct from that of his wife as if the wife had brought no suit, and the finding of the court should be upon each separately."

But, even if it were not permissible to embrace such cause of action in a cross-complaint, it could have been made the subject-matter of an independent action instituted by the defendant against plaintiff, and, under the statute (Crawford & Moses' Digest, 1081), the two actions could have been consolidated and tried together. Hence there could have been no prejudice in permitting the plea to be made by way of cross-complaint.

After careful consideration of the evidence we have reached the conclusion that the chancellor was correct in his finding against plaintiff in her prayer for divorce and in his finding in favor of defendant on his cross-com-

plaint. No useful purpose would be served in discussing the testimony in detail. The plaintiff and her two daughters testified as to numerous instances of misconduct on the part of defendant in his relations with the plaintiff, and the girls also testified in regard to alleged improper conduct of defendant toward them. There was also some corroboration with regard to the charge that the defendant was at times quarrelsome in his dealings with plaintiff, but this was all denied by defendant, and he was corroborated by a number of witnesses, who were in position to have had information as to misconduct on his part if it had occurred as claimed by plaintiff. The testimony of the girls, in regard to certain misconduct of defendant toward them, is without any corroboration at all, and is denied by defendant. In addition to that, he is supported by the fact that the undisputed evidence shows that he took an interest in the girls and furnished money to educate them—conduct on his part which is wholly at variance with the charge that he had at times been guilty of such reprehensible conduct toward them as they described in their testimony.

The defendant relied, in seeking a divorce on his cross-complaint, on the single charge that plaintiff made a murderous assault upon him. It was shown by undisputed evidence that plaintiff walked into the hotel lobby, armed with a pistol, and, after roughly accosting defendant, fired several shots at him. She testified that she had no recollection of the incident, though it was, as before stated, proved by undisputed testimony, and occurred just a short time before the trial. She relied, in defense against the charge, that she was laboring under mental incapacity at the time of the alleged assault. But the testimony warranted the chancellor in finding against her on that feature of the case. Her conduct on the occasion, as described by many witnesses, indicated uncontrolled wrath instead of mental aberration. Physicians testified that, after the assault, her condition indicated a nervous breakdown. This could be true and yet she could have been mentally responsible when she made this

assault. We think the chancellor's finding on this question should be sustained.

The principles of law governing this feature of the case were announced in *Crabtree* v. *Crabtree,* 154 Ark. 401, 242 S. W. 814, 24 A. L. R. 912, and the facts of the present case fall within that decision.

The next contention of plaintiff is that the court erred in sustaining defendant's plea of limitations against recovery on the debt for money loaned in 1914, at Shreveport. It is insisted that the court erred in permitting defendant to plead the statute of limitation for the first time in his amended answer. This contention might be disposed of by saying that plaintiff, in filing an amended complaint varying the allegations of the original complaint, invited the amended answer with any defense which would have been permissible under the original complaint; but the contention is otherwise unsound, for the obvious reason that it was in the discretion of the court to permit amendment to the pleadings so as to bring in additional defenses.

It will be observed from the above recital that, according to the pleadings, and also according to the testimony in the case, the loans of money which formed the basis of this feature of plaintiff's case were made in the year of 1914, in the State of Louisiana, and matured more than six years before the intermarriage between the parties. Therefore, if the statute bar attached at all, it was complete before the intermarriage. The parties resided in the State of Louisiana from the time the alleged indebtedness accrued up to the time of their intermarriage in the year 1920. No question relating to the running of the statute as between husband and wife is involved in this case. As before stated, the indebtedness accrued and the statute bar attached, if at all, prior to the intermarriage.

It is a rule of universal application that questions arising upon the statutes of limitations are governed by the law of the forum, and the doctrine has been often announced by this court. *Blackburn* v. *Morton,* 18 Ark.

384; *Chisholm* v. *Crye,* 83 Ark. 495, 104 S. W. 167; *Rock Island Plow Co.* v. *Masterson,* 96 Ark. 446, 132 S. W. 216; *Rock Island Railroad* v. *Lena Lumber Co.,* 99 Ark. 105, 137 S. W. 562.

There is what may appear to be an exception to this rule where both parties have resided in the State where the cause of action arose for the full period of the statute of limitations of that State, so that the cause of action there was extinguished by operation of the statute, and the laws of that State control. *Moores* v. *Winter,* 67 Ark. 189, 53 S. W. 1057; *Finnell* v. *Southern Kan. Ry. Co.,* 33 Fed. 427.

This case involves, however, not a question where the cause of action was extinguished in another State, but is one where the right of action is asserted in this State, and it falls within the rule that the law of the forum controls. It may be said, however, that it is conceded that, under the Louisiana statutes, the right of action was barred, but counsel seeks to avoid that by relying on the provision of the Louisiana statute excepting husband and wife from its operation. The answer to this is, the parties were not husband and wife when the statute bar attached. The statute bar had attached, unless something had been done to interrupt its operation, and the only thing claimed by plaintiff is that there was a payment of $1,000 made by defendant to her on the notes which she held, in the year 1922. This feature of the case, of course, turns on the disputed question of fact whether or not the defendant made payment to the plaintiff on the notes. She and her two daughters testified that defendant paid plaintiff $1,000 on the notes. This is denied by defendant. He admits, in his testimony, that he delivered to plaintiff, at the time claimed, two checks aggregating $1,500, but that no part of those funds was intended to be a payment on the indebtedness, but, on the contrary, both sums were delivered to plaintiff for the purpose of buying furnishings to install in the hotel, and it was so used, except a small part of it, which he told plaintiff she could use for her personal

expenses and those of her daughters. In this conten-
tion defendant is corroborated by witness Moore, who
was joint owner with defendant in the construction and
operation of the hotel. Moore testified that he sold out
his interest to defendant, and that they had a full settle-
ment, in which the question arose concerning the cost of
the furnishing of the hotel, and in the conversation which
occurred between him and defendant, and at which the
plaintiff was present, the defendant made the statement
and claimed that he had furnished $1,500 to his wife for
the purpose of purchasing furnishings for the hotel, and
that she had spent all of the money, except about $120,
in that manner, and that he was entitled to a credit in
the settlement. Moore testified positively that plaintiff
was present and acquiesced in the statement, and, upon
the strength of it, he allowed credit to defendant for
$1,500, without deducting the small amount which had
been used by plaintiff for her own personal expenses.
The chancery court decided this issue of fact in favor
of defendant, and we cannot say that the finding is
against the preponderance of the evidence.

This disposes of the question based on the statute of
limitation, for it is not contended that any other payments
were made or anything else done to interrupt the running
of the statute.

The defendant has appealed from that part of the
decree which awarded recovery to plaintiff of $3,100 and
interest for borrowed money during the marriage. The
contention is that this claim is not supported by the evi-
dence. The decision of this question turns upon the
weight of testimony given by the parties themselves.
Plaintiff testified that she advanced this amount of
money to defendant for his use in a second-hand automo-
bile business in which he was engaged. Defendant
admitted that he had, a few times, borrowed very small
sums of money from plaintiff, but in each instance had
repaid the amounts within a short time, and that he owed
her nothing. He claimed that he had paid everything
he had borrowed, both before and after the marriage,

but .the chancellor has found against him on that question of borrowing money after the marriage, and we are unable to discover that the finding of the chancellor, in this regard, is against the preponderance of the testimony.

The same may be said with reference to the finding of the chancery court concerning the two diamonds. The decision of this feature turns upon the conflict in the evidence of the parties, and we cannot say that the testimony is against the court's finding on both those issues. The testimony appears to us to be about evenly balanced, depending upon which one of the parties is to be believed, and, under those circumstances, it is our duty to leave the findings of the chancellor undisturbed.

Our conclusion therefore is that the decree of the chancery court should be affirmed upon each appeal, and it is so ordered.