HERVEY *v.* COLLEGE OF THE OZARKS.

4-5100

Opinion delivered June 27, 1938.

*Reynolds & Maze,* for appellant.

*Paul McKennon, George O. Patterson* and *E. H. Patterson,* for appellee.

HUMPHREYS, J. Appellee brought this suit on August 3, 1932, in the chancery court of Johnson county against appellants to reform a deed executed by Dave Hervey and Annie Hervey, his wife, to appellee on March 26, 1932, so as to include in the description the south 30 feet of the east half of lot 2 in block 7 in College Addition to Clarksville, and to cancel a deed executed on

April 23, 1932, by Dave Hervey and Annie Hervey, his wife, to their daughter to the south 30 feet of the east half of lot 2 in said block.

It was alleged in the complaint that appellee bought the east half of lot 1 and the south 30 feet of lot 2 in said block from Dave Hervey and Annie Hervey and through a mutual mistake they only conveyed to it the east half of lot 1 in block 7 and that within a month after making the conveyance they conveyed the south 30 feet of the east half of lot 2 in said block to their daughter, Marie Hervey, without consideration and placed same on record to prevent appellee from occupying same.

On September 12, 1932, appellants filed an answer to the complaint denying all the allegations therein and stating that the deed from Dave Hervey and Annie Hervey to appellee correctly described the property intended to be conveyed to it.

Upon a hearing of the cause, the chancery court found the issues for appellee, canceled the deed from Dave Hervey and Annie Hervey to their daughter, and reformed the deed from Dave Hervey and Annie Hervey to appellee so as to include the south 30 feet of said lot 2, from which is this appeal.

We have read the evidence very carefully to ascertain whether it clearly, unequivocally and decisively shows that it was the intention of Dave Hervey to sell all his home place to appellee including the east half of lot 1 and the south 30 feet of lot 2 in block 7 in College Addition to Clarksville, and whether appellee intended to buy all the home place, including both pieces of property, or whether Dave Hervey intended to sell and appellee intended to buy only a part of the home place. The rule laid down in *Hoyer* v. *Edwards*, 182 Ark. 624, 32 S. W. 2d 812, is as follows: "The question raised by the appeal is one of fact because the law relating to the reformation of written instruments by parol evidence has been well settled by the repeated decisions of this court. There is no doubt that a court of equity may reform a deed or other written instrument where, on account of mutual mistake, such instrument does not reflect the intention of the parties thereto and the mistake may be

proved by parol evidence only. To justify reformation, however, against the will of one of the parties thereto, the evidence of the mistake must be established by clear, convincing and decisive evidence. *McGuigan* v. *Gaines,* 71 Ark. 614, 77 S. W. 52, and *Sewell* v. *Umsted,* 169 Ark. 1102, 278 S. W. 36. So, too, parol evidence is admissible in an action to reform a written instrument on the grounds of fraud and mistake, but the evidence to warrant a reformation must be clear and convincing. *Welch* v. *Welch,* 132 Ark. 227, 200 S. W. 139.''

The evidence is undisputed that Dave Hervey had been trying to sell his home place to appellee for several years; that appellee owned all the property around his place and was the only likely purchaser to whom it might be sold; that during the years Dave Hervey was trying to sell his home place to appellee he discussed it with the college authorities himself and requested A. N. Hannah, Robert Jamison and Paul McKennon to aid him; that they complied with his request; that in making the request he referred to the property he wanted to sell as his home place; that in talking to the officers of the college, and especially to Dr. Wiley Lyon Hurie, president of the college, about the sale of his property, he referred to it as his home place.

The undisputed evidence also shows that the south 30 feet of lot 2 adjoins lot 1 on the west and that his front lawn embraced both lots and that he used the back part of the south 30 feet of lot 2 owned by him as a garden and had it fenced in for that purpose and was using both pieces of the property as a home and had been doing so for a long time; and that Dr. Hurie informed Dave Hervey and the parties sent to him that the college did not have the money to buy it, but the college would likely want it in the plan for the extension of its campus when the college should get the money; that it finally acquired sufficient funds to buy it and build a chapel and that negotiations were entered into between a committee appointed by the board of trustees of the college and Dave Hervey; that the negotiations were entered into between the committee, through Dr. Hurie and Dave Hervey which resulted in the purchase of the home place for $4,500 out

of which the college was to pay a mortgage for $2,500 and interest to a Mr. Davis and a second mortgage for $500 to the bank, and to pay Dave Hervey the difference between the mortgages and the contract price less past-due tuition due by Hervey for the attendance of his daughter at the college; that the mortgages referred to covered only the east half of lot 1, block 7, College Addition to the town of Clarksville; that when the terms of the purchase were agreed upon Dr. Hurie instructed the attorney of the college to attend to the necessary matters of settling the mortgages and drawing the deed from D. W. Hervey and wife, to the college for his home property; that pending the preparation of the deed Dr. Hurie, representing the college, and D. W. Hervey entered into a written agreement which in part is as follows:

"It is understood between Dave Hervey and W. L. Hurie, representing a committee on purchase of property of the board of trustees of the College of the Ozarks, that Mr. Hervey will sell his home and lot for the sum of $4,500. . . ." The part of the contract omitted refers to the manner of payment, and it is unnecessary to copy it.

The undisputed evidence reflects that, pursuant to the direction that Dr. Hurie gave Paul McKennon, the attorney for the college, he ascertained the amounts due on the mortgages and drew a deed from Hervey and wife to the college, and in doing so followed the description in the mortgages and embraced in the deed only the east half of lot 1 in said block. Paul McKennon testified that after he had delivered the deed to D. W. Hervey for execution that he discovered that it did not describe all the property in the home place of Hervey and drew a second deed describing the south 30 feet of lot 2 in said block and presented same to Hervey for execution, but that Hervey told him no mistake had been made in the first deed as he had only intended to sell the college the east half of lot 1 in said block. The record reflects that before Paul McKennon had drawn and presented the second deed to Hervey the first deed had been delivered and Hervey had received the balance of the money due him.

Hervey testified that when he executed and delivered the deed to Dr. Hurie he was asked by Dr. Hurie how much land the college was getting and that he told him it was 100 by 125 feet, and that after receiving this information he accepted the deed and paid him the balance due under the contract. Dr. Hurie testified that no such conversation ever occurred and that the statement of D. W. Hervey in that regard is untrue.

The undisputed testimony shows that Dr. Hurie looked the property over a time or two during the negotiations and that D. W. Hervey never intimated to him that he expected to reserve a part of his front lawn and his garden and that Dr. Hurie expected to receive a deed to all of the front lawn and the garden as all of it was occupied and used as his home at that time.

The evidence reflects that when the college began to build the chapel objection was made to it using any part of the south 30 feet of the east half of lot 2 and that when Dr. Hurie took the matter up with D. W. Hervey, Hervey informed him that he did not intend to deed the college that part of the place and that he had conveyed it to his daughter.

The record reflects without dispute that $4,500 was a fair price for the whole property.

The record also reflects that within one month after he executed the first deed Hervey executed a deed to his daughter to the south 30 feet of the east half of lot 2 for a purported consideration of $500; but Hervey admitted that no part of the consideration was paid to him by his daughter at the time the deed was made or afterwards. He testified that he gave the said lot to his daughter as a graduating present, but admitted that she had not graduated and would not graduate for a year after the execution of the deed.

This court stated in the case of *Welch* v. *Welch*, 132 Ark. 227, 200 S. W. 139, that: "Equity has jurisdiction to reform written instruments in but two well-defined cases: (1) Where there is a mutual mistake, that is, where there has been a meeting of minds, and agreement actually entered into, but the contract, deed, settlement or other instrument, in its written form does not express

what was really intended by the parties thereto; and (2) where there has been a mistake of one party, accompanied by fraud or inequitable conduct of the remaining parties. In such cases the instrument may be made to conform to the agreement or transaction entered into, according to the intention of the parties. The conditions of fact giving rise to the jurisdiction to grant reformation are numerous. Almost all written instruments may be reformed when proper occasion is furnished.''

Our conclusion from the whole testimony is that Hervey intended to sell, and the College of the Ozarks intended to buy, Hervey's home place as it was occupied and used by him at the time it agreed to give him $4,500 for his home property. If this was not the intention of W. D. Hervey at the time he executed the deed to the College of the Ozarks, good faith required on his part that he state to Dr. Hurie when they were inspecting the place that a part of the lawn and garden was not a part thereof. There is no doubt in the evidence that the officials of the college expected to get all the home place when they bought the property, and if Hervey did not intend to sell and convey all of it to the college his conduct in failing to notify them to the contrary was inequitable.

Upon either theory under the rule laid down in the case of *Welch* v. *Welch, supra,* the chancery court in the instant case was justified under the evidence in so finding and in cancelling the deed Hervey and his wife made to their daughter and in reforming the deed they made to the college so as to include the south 30 feet of the east half of lot 2 in said block.

No error appearing, the decree is affirmed.