# D. B. WRIGHT *v.* Vic LANGDON and Thelma LANGDON, His Wife, and Etta JANSSEN

81-141                                    623 S.W. 2d 823

Supreme Court of Arkansas
Opinion delivered November 9, 1981
[Rehearing denied December 14, 1981.]

*J. R. Nash,* for appellant.

*Mattingly & Alexander,* by: *Lesly W. Mattingly,* for appellees Langdon.

*Dan J. Kroha,* for appellee Janssen.

STEELE HAYS, Justice. This dispute arises from the September 24, 1973, sale of a mobile home which the sellers, Vic and Thelma Langdon, were financing through a credit union. Facing transfer from the air base, the Langdons sought a buyer and negotiated an agreement with John and Etta Janssen[1] to pay $200.00 down and $130.00 a month until they had paid the sum of $8,800.00. The Langdons contacted the credit union to ask the unpaid balance of their debt and were told $8,800.00. Unfortunately, this was only the amount necessary to pre-pay the debt in cash, but the Langdons mistakenly assumed it to be the entire balance of the indebtedness.

---

[1]John Janssen had deceased when the litigation began.

The Langdons say they asked D. B. Wright, a real estate and insurance broker, to prepare the contract and collect the payments, for which he received a fee of 10%. Wright admits handling the payments and retaining $880.00 as fee, but denies having any part in the drafting of the contract. Other witnesses say he did participate in the preparation of the contract and was present at the signing.

The contract reflected a total purchase price of $8,800.00 to be paid at $130.00 a month. It made no mention of interest or that the purchasers assumed the outstanding balance due the credit union. Thus, when Etta Janssen had paid a total of $8,800.00 she had fully performed under the contract and called on the Langdons for a clear title. It was then that the Langdons contacted the credit union and learned, apparently for the first time, that $4,290.00 was still due.

When her title was not forthcoming, Ms. Janssen sued for specific performance and the Langdons joined D. B. Wright as a third-party defendant, alleging that he had engaged in the unlawful practice of law and was negligent in the preparation of the contract. Wright denied these allegations and asked that the contract be reformed because of mutual mistake as to the purchase price.

The case was tried on July 1, 1980, continued to July 25, and completed on September 8. The chancellor found that Etta Janssen had performed all obligations under the contract and was entitled to a clear title. He also found that D. B. Wright had prepared the contract negligently and had engaged in the unauthorized practice of law. He granted a judgment against him for $4,290.00, plus interest. On appeal, Wright argues that the chancellor erred in refusing to hold the Langdons' claim against him was barred by limitations, in finding he was negligent in drafting the contract and in refusing to reform it. We affirm the chancellor.

I.

The appellant first argues the Langdons' cause of action accrued in September of 1973 when the error oc-

curred, and hence the trial court should have held their claim was barred by the statute of limitations, Ark. Stat. Ann. § 37-206 (Repl. 1962). It is true the decree did contain a mistatement of law in concluding the Langdons' cause of action did not commence until after the error was discovered in 1979, as the settled law of this State is that a cause of action arises when the negligent conduct occurs rather than when it is discovered. *White* v. *Reagan,* 32 Ark. 281 (1877); *Adams* v. *Greer,* 114 F. Supp. 770 (W.D. Ark. 1953). This rule has been soundly criticized but is still the law. 27 *Ark. Law Rev.* 472. But we regard this mistatement as merely gratuitous for the reason that the defense of limitations is an affirmative defense that must be pleaded and here it was not raised until the trial was nearly completed. A. R. Civ. P. Rule 8; *Ashley* v. *Eisele,* 247 Ark. 281, 445 S.W. 2d 76 (1969). These pleadings were joined in June 1979; the case was tried on July 1, 1980, and continued to July 25, 1980, for the deposition of appellant's associate, a Mr. Taveau. On July 22 appellant attempted to amend his answer and assert the defenses of limitations and laches and the appellees promptly moved to strike the amendment. After satisfying himself that new defenses were not induced by the deposition or by the appellees, the chancellor granted the motion to strike and we find no error in that ruling. A. R. Civ. P. Rule 15 permits amendment to pleadings "at any time" and is expressly intended to liberalize the earlier rule requiring leave of court to amend the pleadings. Even so, no hard and fast rule can be defined and in the end the discretion of the trial judge must largely determine when it becomes improper and prejudicial to permit a new defense to be introduced late in the trial. *White* v. *Cliff Peck Chev. Co. Inc.,* 266 Ark. 942, 587 S.W. 2d 606 (Ark. App. 1979); *Pettigrew* v. *Pettigrew,* 172 Ark. 647, 291 S.W. 90 (1927); *Cole* v. *Branch & O'Neal,* 171 Ark. 611, 285 S.W. 353 (1926). The pleadings had been joined for a year, the Langdons evidently were currently stationed a great distance away in Alaska, all of the parties had testified and the case was close to completion when appellant attempted to interpose new defenses. We think the chancellor's discretion was not abused.

We are not overlooking the fact that appellant again moved on September 8 to permit the defenses of limitations

and contributory negligence, and the chancellor indicated that while he believed his earlier ruling was correct he would reserve judgment until deciding the case. The record does not demonstrate that the chancellor intended to reverse his previous ruling, and we believe he was correct in the first instance. The fair inference is that if appellant had requested a ruling on the motion at the September 8 hearing it would have been denied. He cannot, on appeal, claim reversible error where the record is silent or uncertain. *Rea* v. *Ruff*, 265 Ark. 678, 580 S.W. 2d 471 (1979). Even if we could say otherwise, and that the misstatement was error affecting the result, chancery cases are tried *de novo* and even if the chancellor improperly applied the law, if he reached the right result we affirm. *Davis* v. *Davis*, 270 Ark. 180, 603 S.W. 2d 900 (Ark. App. 1980).

## II.

In the court below and on appeal appellant insists the chancellor erred in finding that he prepared the contract, suggesting, instead, that it was his associate, Mr. Taveau, who prepared it. Appellant urges that we reverse the finding that he engaged in the practice of law and was guilty of negligence in failing to provide a clause requiring liquidation of the debt to the credit union. But the issue concerning preparation of the contract was disputed and there was testimony supporting either side. Certainly it could not be said that the findings were clearly erroneous. A.R.C.P. Rule 52. In fact, the evidence easily preponderates in favor of the chancellor's findings. Appellant claimed he never saw the contract until the litigation arose, never discussed it with anyone, did not sign it and was not present when it was signed. These denials are contradicted in one way or another by the combined testimony of the other parties, including Mr. Taveau, and are unconvincing, to say the least. Appellant admits he processed the monthly payments and benefitted by a sizable fee for his services. We have no difficulty upholding the finding the appellant either prepared or directed Mr. Taveau to prepare the contract and by so doing engaged in the unauthorized practice of law.

Of more concern is what standard of care should be

applied to the conduct of one who improperly assumes the function of a lawyer. Appellant asserts that no Arkansas case law can be found on the point and we come to the same view. But reason urges that the standard should be no less than that required of a licensed attorney, and conceivably an even higher standard would be appropriate — strict liability, for example, to deter those who might be otherwise tempted to profess a competence they have no right to claim. There is authority for either proposition: in the early case of *Miller* v. *Whelan*, 42 N.E. 59 (1895), it was said that one who represents himself to be an attorney is accountable as though he were. *Hecomovich* v. *Nielsen*, 518 P. 2d 1081 (Ct. of App. of Wash. 1974), holds that a real estate broker who undertakes to practice law is liable for his negligence, the standard of care being that of a practicing attorney. In *Mattieligh* v. *Poe*, 356 P. 2d 328 (Wash. S. Ct., 1960), a broker engaged in the unauthorized practice of law was held liable for negligence in the preparation of a contract. *Burien Motors Inc.* v. *Balch*, 513 P. 2d 582 (Ct. of App. of Wash. 1973), holds the standard of care required of one who undertakes to function as a lawyer is the same as that required of lawyers. See also *Latson* v. *Eaton*, 341 P. 2d 247 (Okla. S. Ct. 1959). The same reasoning and standard have been applied in cases involving the unauthorized practice of medicine. *State of Washington* v. *Maxfield*, 285 P. 2d 887 (Wash. S. Ct. 1955); *Kelly* v. *Carroll*, 219 P. 2d 79 (Wash. S. Ct. 1950). In at least one state, *absolute liability* has been imposed:

> Persons who without authority engage in acts that may be construed as such practice, should take warning from this case, for they are acting at their peril. Absolute liability is placed on the unauthorized practitioner for any mistake that may be incorporated in his work, for no matter how deeply concealed the defect may lie his failure to draw an instrument validly, to the injury of anyone, is negligence per se . . . . *Biakanja* v. *Irving*, 310 P. 2d 63 (Cal. App. 1957).

We need not settle the issue here, as the chancellor gave appellant the benefit of the lesser standard. The fact that appellant knew of the outstanding indebtedness to the credit union and failed to include an appropriate provision in the

contract caused the Langdons' loss and fully sustains the finding of negligence. See *Hecomovich* v. *Nielsen, supra.*

### III.

Finally, at or near the close of the proof the appellant and the Langdons moved to reform the contract consistent with a claimed intention of the parties that the Janssens would pay $130.00 per month until the indebtedness to the credit union was fully paid. Appellant asserts that the chancellor erred in refusing to so reform, citing *Yeargan* v. *Bank of Montgomery County,* 268 Ark. 752, 595 S.W. 2d 704 (Ark. App. 1980). But the difference between the case at bar and *Yeargen* is that the mistake there was *mutual,* whereas here there is no clear and convincing evidence that the parties intended a purchase price greater than the $8,800.00 recited in the agreement and, thus, the mistake was at best unilateral. *Arnett & Arnett* v. *Lillard,* 245 Ark. 939, 436 S.W. 2d 106 (1969); *Hervey* v. *College of the Ozarks,* 196 Ark. 481, 118 S.W. 2d 576 (1936); *Fullerton* v. *Storthz,* 182 Ark. 751, 33 S.W. 2d 714 (1930).

The decree is affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I disagree with the majority for two reasons. First, I think the statute of limitations should have been allowed as a defense on behalf of appellant. Second, I think the contract should have been reformed. I have no disagreement with the majority opinion in holding that appellant was illegally practicing law. However, I feel he should have been allowed to make an affirmative defense of the statute of limitations because he attempted to do so during the course of the trial.

It is obvious to me that the Langdons and the Janssens understood that a balance was owed on the mobile home in the amount of $8,800. All four of them recognized that a loan existed on the property and the purchasers attempted to assume the loan. They also failed in an attempt to obtain another loan. It is quite clear to me that all of the parties

knew there was a balance owing at the time of this contract in the amount of $8,800. It necessarily follows that all of them knew interest would have to be paid on the balance. Therefore, I would hold the claim against the appellant barred by the statute of limitations and reform the contract to require the purchasers to finish paying for the mobile home.